E. Massey vs. J. Massey's Lessee.

J. Massey's Lessee vs. E. Massey.

CROSS APPEALS from *Queen Anne's* County Court. *Ejectment* for the following tracts of land, viz. *Friendship, Mas-*

A F was, by a decree of the court of chancery, appointed a trustee to sell certain lands for the payment of the debts of W F, deceased, and authorised, upon the confirmation of the sale and receipt of the purchase money, to execute a conveyance to the purchaser, and his heirs. A F so'd the lands to J M, and the sale was confirmed by the chancellor. J M, the purchaser, died intestate, leaving B M and C M his heirs at law, to whom A F the trustee, conveyed the lands purchased by J M—*Held*, in an action of ejectment to recover the lands, that the deed might be read in evidence.

Where a sale is made by a trustee appointed by decree of the court of chancery, which is ratified, the legal estate, on the death of the purchaser, the purchase money being paid, does not vest in the heir at law of the purchaser, without a deed from the trustee

A commission to make partition of lands, and the return thereto, not permitted to be read in evidence, the commission being defective, inasmuch as the oath of the commissioners was not annexed to it, and the commission and return did not appear by evidence to have been ratified by the court.

A will executed in 1804, devising real and personal estate, was decreed by the orphans court to have been impliedly revoked, and was refused to be admitted to probate. On appeal to the court of chancery, the decree of the orphans court was affirmed. In an action of ejectment, to recover the lands devised thereby, the will was offered in evidence by the plaintiff—*Held*, that the decision of the orphans court and court of chancery was not conclusive, and that the plaintiff might prove the execution of the will,

1816.

E. Massey
vs
J. Massey

Parol evidence is not admissible to prove that a testator had frequently declared, and on the day before his death, and some time after the execution of a paper purporting to be his last will, that he had made a will and believed he had destroyed it; that as he could not find it, he supposed he must have destroyed it, but was uncasy about it, as he intended and wished to alter it, and requested the witnesses to go to his house for that purpose.

H M, being a married man, made his will in May 1804, and afterwards had two children, one in January 1805, and the other in June 1807 In July 1804 he acquired by purchase 399 acres of land, and in August 1805, in like manner 76 acres of land more, of which he died seized—Held, that the will was in force, and as such admissible in evidence.

Where the verdict for the plaintiff in an action of ejectment was for certain lands as mentioned and included in certain conveyances set forth in the verdict, and judgment was thereon rendered for the plaintiff.

sey's Part of Friendship Corrected, Spry's Chance. Collin's Range, and Friendship.    General defence, and issue.

1. The plaintiff at the trial read in evidence the patent of one of the tracts called Friendship, granted to Col. Richard Tilghman the 10th of October 1732, and traced a regular title down from Tilghman for part of Friendship, to William Falconer.    He then read in evidence the patent of the other tract called Friendship, granted to Francis Spry the 11th of September 1728, and traced a regular title in part of the same land to William Falconer, who he proved was dead; and then read in evidence the proceedings in the court of chancery in November 1794, on a bill filed by Comegys and others against the heirs of the said Falconer, to show that his real estate was sold by a decree of that court for the payment of his debts. That Abraham Falconer was appointed the trustee to make the sale, who was directed to execute a bond, give notice, &c. and after the sale to make report of his proceedings to the court of chancery; "and that upon the ratification and confirmation of the sale, and upon the receipt of the purchase money, the said trustee, by a good deed indented, to be acknowledged and recorded agreeably to law, shall give, grant, bargain and sell, release and confirm, unto the purchaser or purchasers of the said land, or parcel thereof, and his, her, or their heirs, the land to him, her or them sold, and all the right, title, interest, and estate therein, which from the deceased hath descended, or by him hath been devised unto the defendants, or any of them; and the purchaser or purchasers, and his, her or their heirs and assigns, shall thereupon be entitled to hold the same free, clear and discharged, from all claims of the said defendants, or any of them. claiming by, from, or under the deceased.".    That, sales of the real estate were made, and that Abraham Falconer, the trustee, sold the same to a certain James Massey, on the 4th of April 1795. and on the 17th of August 1795; which sales were approved, ratified and confirmed, by the chancellor, on the 24th of June 1795, and 22d of December 1796.    The plaintiff then proved that James Massey, the purchaser, died intestate in the year 1795, and left James Massey and Joshua Massey, his only children and heirs at law; and then produced and offered to read in evidence, the deed of Abraham Falconer, the trustee, to James Massey and Joshua Massey, the sons and heirs at law of the said James Massey, under whom the plaintiff claims, dated the 11th of January 1799.    To the reading of this deed in evidence the defendant objected, on the ground that Abraham Falconer, the trustee, had no power or authority to convey to any person but to James Massey, the purchaser, and that the deed from the trustee to James Massey and Joshua Massey, heirs at law of James Massey, under whom the lessor of the plaintiff claimed, did not convey such a title as would enable him to support the action for the parts of the land aforesaid; and

the Court, [*Purnell*, A. J.] being of this opinion, refused to permit the deed to be read in evidence to the jury. The plaintiff excepted.

2. The plaintiff then proved the payment of the purchase money to *Abraham Falconer*, the trustee, by *James Massey*, the executor of *James Massey*, the purchaser, and prayed the court to direct the jury, that the legal estate and title in the lands sold by *Abraham Falconer*, was vested in the heirs of *James Massey*, the purchaser, under the decree of the chancellor, by operation of law, on the payment of the purchase money, without a deed from the trustee. But the court refused to give this direction, being of opinion that the legal estate in the lands in question could not be conveyed agreeably to the acts of assembly in this state, otherwise than by deed enrolled, from the trustee to the purchaser. The plaintiff excepted.

3. The plaintiff then produced the original commission issued from the county court of *Queen Anne's* county on the 3d of November 1797, on the petition of *James Massey*, filed at October term 1797, stating that he, together with *Joshua Massey* an infant, under the age of 21 years, were seized in fee simple of the following parcels of land lying in *Queen Anne's* county, to wit, part of a tract called *Friendship*, part of a tract called *Spry's Friendship*,, and part of a tract called *Massey's part of Friendship Corrected*, a tract called *Spry's Chance*, and part of a tract called *Hazard*, which descended to the said *James* and *Joshua*, and prayed that a commission might issue to make division of the same agreeably to the act of assembly in such case made and provided; which commission was directed to *Benjamin Roberts*, and four other gentlemen who were appointed by the court commissioners to act in the premises agreeably to law, &c. who afterwards certified to the said court, under their hands and seals, on the 29th of November 1797, "that pursuant to the annexed commission to us directed, we have given notice of our intentions of meeting on the lands mentioned in said commission, to all the parties interested, and have taken the oath by law directed, and having appointed and qualified *Cornelius Comegys* surveyor, and *John Comegys* and *David Spry* chain-carriers on the occasion, we have caused the several tracts and parts of tracts or parcels of land mentioned in said commission to be carefully surveyed; by which there appears to be included in the several tracts or parts of tracts of land aforesaid the quantity of 459 acres; and as the quality of the land, and the improvements thereon, are as nearly equal as possible, we have caused the same to be equally divided, hereby assigning to *James Massey* that part lying," &c. "and the part lying," &c. "unto *Joshua Massey*, as will more fully appear on the plot of the whole hereunto annexed." Together with the endorsements made by the late clerk of *Queen Anne's* county court on the said commis-

1816.

E. Massey
vs
J. Massey

sion, viz. "Commission and return on the division of *James Massey's* lands—Received May 17th, 1798, and the same day was, with the endorsements thereon, recorded in lib. R T, No. 3, one of the record books for *Queen Anne's* county.

*Saml. T. Wright*, Clk."

It being objected that the commission was irregular and defective, in as much as there was no oath of the commissioners annexed to it, and that the commission did not appear to be ratified. The plaintiff, for the purpose of showing the correctness of the commission, and of the return, and the practice of the clerk's office of *Queen Anne's* county, produced the record of the said commission from the record book, which is as follows, viz. "*Queen Anne's* county, to wit: At another time, to wit, on the 23d day of October *anno domini* 1797, the state's commission for the *examination of evidences to prove and perpetuate the memory of the bounds of a tract of land*, part of a tract of land called *Friendship*, part of a tract called *Spry's Friendship*, part of a tract called *Massey's Part of Friendship Corrected*, a tract called *Spry's Chance*, a part of a tract called *Hazard*, was issued out of *Queen Anne's* county court to Messrs. *Benjamin Roberts*," &c. "of *Queen Anne's* county, gentlemen, directed, according to the form of the act of assembly in such case made and provided; the aforesaid *Benjamin Roberts*," &c. "to the court here make return of the same commission, with their proper hands thereto subscribed, and seals affixed, in manner and form following, to wit:" [Here follow the commission, return and plot as before stated.] And for the purpose of accounting for irregularity and want of form in the record of the commission, referred to the records of commissions in like cases in the same record books, many of which appeared in like form. And in order to support the commission itself, and to show that it was good without having the oath annexed by the clerk to the commission, referred to commissions of like kind issued from the county court of *Queen Anne's*, all of which, down to the said year, appeared in like form, and many of which were proved to be ratified by the court by actual entries made by the clerk on his minutes, and by the endorsement of the word "*confirmed*," endorsed on the commission, in the hand-writing of the clerk. And for the purpose of furnishing evidence that this commission was ratified by the court, the plaintiff produced sundry commissions of like nature, which had been recorded on the records, although no other evidence was furnished from the minutes, or other entries, of the said late clerk of *Queen Anne's* county court, that the same had been ratified by the court. But the court were of opinion, that the commission was defective, because the oath of the commissioners was not annexed to the same, and because the commission and return did not appear by evidence to have been ratified by the court; and therefore refused to suffer the plaintiff to read either in evidence to the jury. The plaintiff excepted.

4. The plaintiff produced a paper, purporting to be the last will and testament of *Hemsley Massey*, dated the 13th of May 1804, and executed in the presence of three witnesses, whereby he bequeathed certain legacies to several of his relations, and devised to his executors, in trust for his wife during her life, sundry tracts of land. He also devised to his wife sundry other tracts of land during her life, and bequeathed to her sundry slaves, and other personal property, and manumitted some of his slaves. He also provided that should his wife be pregnant at his death, and have issue by him, he devised to such issue, and to the heirs of such issue, all the lands he had given to his wife during her life, at her death. He also bequeathed to such issue a legacy; and in case his wife should have no issue by him, then he devised the same lands to his sister *E. Simmons*, in tail, remainder to his half brother *L. Massey* in fee. He also devised other lands to his said half brother in tail, remainder to his son-in-law *J. Massey*, in tail, upon condition he convey to his sister *A. Massey*, in fee simple, all lands which descended to him from his father; and if he should not, he then devised the said lands to the said *A. Massey* in tail male. He also devised other lands to his said daughter in law *A. Massey*, in fee simple. All the rest and residue of his estate, both real and personal, he devised to his half brother *L. Massey*. The defendant then gave in evidence, that a caveat had been, before that time, filed in the orphans court of *Queen Anne's* county to the said paper, upon a full hearing of which it had been adjudged and determined by the said orphans court, that the said will had been impliedly revoked, and that it could not be admitted to probate as the last will and testament of the said *Hemsley Massey*. And the defendant further gave in evidence, that an appeal was prayed and granted from the judgment of the orphans court to the court of chancery, in which last court the judgment of the orphans court was in all things affirmed; whereupon the defendant objected to the admissibility of the said paper, purporting to be the last will and testament of the said *Hemsley Massey*, as evidence of title in this cause; and objected to any evidence being given of the execution of said paper. But the court overruled the objection, and permitted the plaintiff to prove the execution of the paper. The defendant excepted.

5. The plaintiff having, under the direction and permission of the court, read in evidence the aforegoing paper purporting to be the last will and testament of *Hemsley Massey*, the defendant then offered to prove by competent witnesses, that the said *Hemsley Massey* had frequently declared, and on the day before his death, and some time after the execution of the said paper, that he had made a will, and believed he had destroyed it; that as he could not find it he supposed he must have destroyed it, but was uneasy about it, as he intended and wished to alter it, and

requested the witnesses to go to his house for that purpose. But the court would not suffer this evidence to be given to the jury. The defendant excepted.

6. The defendant having given evidence that *Hemsley Massey* was a married man at the time of making his will, and that he had two children born after the will, namely *Emily Ann,* born on the 7th of January 1805, and *Sarah Ann,* born on the 30th of June 1807, moved the court to instruct the jury, that if they should be of opinion the said children were born at the times before mentioned, and after making the will aforesaid, that in such case the will was revoked in point of. law. The plaintiff then gave evidence, that the said *Hemsley Massey,* on the 27th of July 1804, acquired by purchase 399½ acres of land, and on the 26th of August 1805, acquired in like manner 76 acres of land, of which he died seized, and that the said lands are situate in *Queen Anne's* county, as appear by copies of conveyances for the said lands produced and read in evidence. But the court refused to give the direction and instruction to the jury as moved by the defendant, but instructed the jury, that the will was in full force, and as such admissible in evidence. The defendant excepted.

*Verdict*—"That the defendant is guilty of the trespass and ejectment aforesaid, of and in all that part of the tract or parcel of land in the declaration aforesaid mentioned, included in a deed from *James Massey, senior,* to *James Massey, junior,* dated the 14th of May 1793, and also of and in one half of the tracts of land in the declaration aforesaid mentioned, contained in the deeds from *Philip Reed* and *Daniel Toes Massey,* to *Hemsley Massey,* dated the 17th of August 1801, which said deeds are now affiled in the office in manner and form aforesaid, and are in the words and figures as follows, to wit: This Indenture," &c. "as the plaintiff complains," &c. *Judgment* upon the verdict for the plaintiff, "for his term yet to come and unexpired of, in and unto, all those parts of the tracts or parcels of land aforesaid particularly specified in the verdict aforesaid, lying and being in the county aforesaid, with the appertenances thereunto belonging. so as aforesaid by the jurors in form aforesaid found," and that the plaintiff have thereof his possession against the defendant, &c. The plaintiff and defendant both appealed to this court.

The cause was argued on both appeals before Buchanan, Nicholson, and Martin, J.

*Bullitt* and *Chambers,* for the Appellant, *(E. Massey).* The *three first* bills of exceptions were taken by the plaintiff below, and the *three last* by the defendant.

On the *fourth* bill of exceptions. By the act of February 1777, ch. 8, s. 12, a will is to be proved where the party had dwelt, &c. They contended, that the will being once

proved, a copy was evidence, which showed that the orphans court had the exclusive jurisdiction on the subject. They also referred to the act of 1798, ch. 101, sub ch. 2, s. 4 to 12, and insisted that the decision of the orphans court, and court of chancery, was conclusive, both under that act, and upon general principles. The commissary general had the right to take probate of wills of land ever since the act of 1715, ch. 39. s. 2, which right was secured to the orphans court by the act of February 1777, ch. 8, giving them all the jurisdiction and authority formerly vested in the county court. An appeal was given by the acts of 1715, ch. 39, s. 27, and 1726, ch. 9, s. 2, from the decision of the commissary general to the governor or a court of delegates.

On the *fifth* and *sixth* bills of exceptions. They contended that the birth of children after the date of a will, where the testator has none before, operates to revoke it. They referred to *Wellington vs. Wellington*, 4 *Burr.* 2171, *(and notes.) Lugg vs. Lugg*, 1 *Ld. Raym.* 441. *Brady vs. Cubit*, 1 *Dougl.* 31, 38. *Overbury vs. Overbury*, 2 *Shower*, 242. *Lancashire vs. Lancashire*, 5 *T. R.* 49. *Onyons vs. Tryers*, *Finch*, 459. *Gibbons vs. Caunt*, 4 *Ves.* 840, 848; *and* 2 *Fonbl.* 351.

On the *first* bill of exceptions they referred to 4 *Com. Dig.* 409, 412. *Rattle vs. Popham*, 2 *Stra.* 992, to show that powers were to be strictly executed.

*Martin*, and *Carmichael*, for *Massey's* Lessee. On the *fourth* bill of exceptions. Although a will of lands may have been proved in the ecclesiastical court, it must be proved in the court of common law also. *Netter vs Brett*, *Cro. Car.* 395. *Pow. on Dev.* 688, 689, 703. Act of 1715, ch. 39, s. 2. The act of 1798, ch. 101, as far as relates to a caveat and appeal to the court of chancery, concerns wills of personal property only. They have nothing to do with the probate of a will of real estate *only*. The Lord Chancellor will require *all* the attesting witnesses, if living, to prove a will, when it is the subject matter of contest in his court. *Rob. on Wills*, 187.

On the *fifth* and *sixth* bills of exceptions. By the statute of frauds, (29 *Car.* II, ch. 3,) wills of personal property shall not be revoked by word of mouth only, *a fortiori*, nor wills of real estate. Words therefore are not to be received as evidence of an implied revocation. The statute is positive, that a will of real estate shall only be revoked by a writing, cancelling, &c. *Selwin vs. Browne*, *Cas. temp. Talb.* 240. *Rob. on Frauds*, 77. *Doe vs. Allen*, 8 *T. R.* 147. They also contended, that the revocation of a will had never been implied on the mere ground of the birth of children. 2 *Fonbl.* 351, 353, *(note b.)*

On the *first* bill of exceptions. Where a trustee does that which by law he might have been compelled to do, and which the chancellor would have ordered him to do, it must be intended to have been rightfully done. A trus-

1816.

The State
vs
Wright

tee under a will may sell or mortgage. *Buth vs. Brad-
ford*, 2 *Ves.* 588. A devise of lands to A and B, in trust
for others in tail and in fee, is a devise in fee to the trus-
tees, though there be not the words *heirs* or *for ever.*
*Shaw vs. Weigh*, 2 *Str.* 798.

On the *second* bill of exceptions. They contended that
the estate vested in the purchaser *immediately* on the sale
and payment of the purchase money. *Pow. on Dev.* 292.

On the *third* bill of exceptions. They referred to *The
State vs. Levy*, 3 *Harr. & M·Hen.* 591.

THE COURT dissented from the opinion of the court be-
low contained in the *first* bill of exceptions, but concurred
with that court in the opinion in all the other bills of ex-
ceptions.

NICHOLSON, J. dissented from the opinion of this court
upon the *first* and *fourth* bills of exceptions.

JUDGMENTS AFFIRMED.