(Decided 15th May, 1885.)

---

CHARLES J. SANDERS *vs.* JAMES McDONALD.

*Purchaser at Trustee's Sale—Payment of Purchase money, but no Deed made to Purchaser—Sec. 67, of Art. 16, of the Code—Ejectment—Lis pendens—Subpœna—Collateral proceeding—Dower—Deed—Estoppel—After acquired Title.*

A trustee's sale of real estate made under a decree, was ratified by the Court, and the purchase money was fully paid, but no deed was made to the purchaser by the trustee. In an ejectment to recover the property from a person claiming under the purchaser, it was HELD:

1st. That the effect of the sale and the payment of the purchase money was only to invest the purchaser with the mere equitable estate in the premises sold, and not the legal title.

Sanders *vs.* McDonald.

2nd. That although the decree under which the property was sold required a deed to be made to the purchaser by the trustee, such case was not embraced within that provision of the Code, (Article 16, section 67,) which gives the decree the operation of a deed.

3rd. That there was no such title conveyed to the purchaser under the decree as would enable him or those claiming under him to defend as against the legal title asserted by a third person not a party to or bound by the decree.

During the pendency of the proceedings for the foreclosure of the mortgage (but whether before or after service of the subpœna, it did not appear,) the mortgagor and his wife conveyed the property to H. who subsequently conveyed the same to the plaintiff in the ejectment. The mortgage upon which the decree was based was defective, and merely equitable, by reason of there being no seals affixed to the signatures of the mortgagor and his wife. HELD:

1st. That to constitute a *lis pendens* to bind a purchaser, a bill must not only be actually filed, having special reference to specific property, but the subpœna must also have been served upon the defendant, before the *lis pendens* will begin.

2nd. That if the deed to H. was made before the subpœna was served in the case for foreclosure, the legal title to the property passed to the grantee unaffected by the subsequent decree for sale; but if there had been service of the subpœna before the deed was delivered, the grantee took subject to the operation of the decree.

3rd. That unless the defendant could show that the deed to H. was after the service of the subpœna upon himself as defendant in the equity suit, that deed conveyed the legal title to H. unaffected by the equity proceedings, and as against the mere equitable mortgage.

4th. That the application of the rule of *lis pendens* was not affected by the fact that the equity proceedings were apparently founded upon a perfect legal mortgage, whereas the mortgage instrument being without seals, it was a mere equitable mortgage.

5th. That although the proceedings may have been, and doubtless were, erroneous in treating the instrument as a regular legal deed of mortgage, the Court having full jurisdiction, the validity or correctness of the decree could not be questioned in a merely collateral suit.

Sanders *vs.* McDonald.

The wife of the mortgagor had united in the deed to H. for the purpose of releasing her contingent right of dower. She subsequently purchased the property from the purchaser under the decree. The ejectment was against her husband holding the possession under her, and the plaintiff derived his title through said deed to H. HELD:

That there was nothing in the deed, either in its terms or by legal operation, that would preclude the wife from setting up and relying upon her after acquired title; and if she could rely upon such title, there could be no reason why the husband holding under or for her, might not also rely upon such title in his wife against the claim of the plaintiff.

APPEAL from the Circuit Court for Allegany County.

This case, an action of ejectment brought by the appellant against the appellee, was submitted to the determination of the Court below upon the following agreed statement of facts, both sides reserving the right to appeal from its judgment :

1st. The property sued for in this case, and described in the declaration, was held and owned on the 16th day of May, 1873, by Francis Haley, who held the same by a good and indefeasible title.

2nd. On the 16th day of May, 1873, said Haley, by a good and sufficient deed, conveyed said property to James McDonald, the defendant.

3rd. On May 26th, 1873, McDonald and his wife executed a mortgage on said property to the Workingmen's Building Association of Cumberland, to secure the payment of dues, &c., on four shares of its stock of the par value of $1040, held by him and redeemed by said Association. On the 7th day of March, 1879, said Association filed its bill of complaint on the equity side of the Circuit Court for Allegany County, to foreclose said mortgage, and a decree was passed for a sale thereof on the 10th of June, 1879, under which decree a sale was made of said property, and the same was purchased by F. Minke, who subsequently sold and conveyed the same to Bridget

McDonald, the defendant's wife, who now holds such title to the same as Minke acquired by said purchase at trustee's sale. The mortgage aforesaid to said Building Association contained no seals to the grantors' names, or if there were seals, they were not recorded, and the land records show the same to be without seals. It is agreed that said mortgage, and the proceedings to foreclose the same, shall be read in either or both Courts from the printed records in the case of *McDonald vs. The Workingmen's Building Association, of Cumberland,* in the Court of Appeals, at October Term, 1883, and the opinion of said Court in said case may also be read in either Court from a manuscript copy; and said printed record, and copy of opinion shall be as full evidence of the matters contained therein as if a full and regularly certified record had been filed in this case.

4th. On the 11th day of April, 1879, McDonald and wife conveyed by deed of bargain and sale to Francis Haley, the aforesaid property sued for in this case.

5th. On the 28th day of September, 1883, Francis Haley conveyed said property to Charles J. Sanders, the plaintiff in this case.

6th. It is agreed that Sanders, at and before the taking of said deed from Haley, had no actual knowledge of the mortgage given by the said McDonalds to the Building Association, or of the aforesaid proceedings to foreclose the same.

7th. It is agreed that at the time of Haley's conveyance to Sanders, the defendant, McDonald was in actual possession of the property sued for, living in the same with his wife and family.

Judgment was entered for the defendant for costs, and the plaintiff appealed.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, IRVING, and BRYAN, J., for the appellee, and submitted for the appellant.

*William S. Bridendolph,* for the appellant.

*William Brace,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This is an action of ejectment brought by the appellant against the appellee, and the case was tried on an agreed statement of facts. The defence is that the title to the property sued for is not in the plaintiff, but in the wife of the defendant; and that defence prevailed in the Court below. The questions involved depend upon the effect of the decree of the 10th of June, 1879, passed in the case of *The Workingmen's Building Association of Cumberland against James McDonald and Wife,* for the sale of mortgaged premises (being the real estate sued for in this case,) and the deed of the 11th of April, 1879, for the same property, from McDonald and wife to Francis Haley.

The bill for the sale of the mortgaged property was filed in the Circuit Court for Allegany County on the 7th of March, 1879, and the subpœna issued thereon against McDonald and wife was returnable to the second Monday of April, 1879. The subpœna was returned "summoned," but the defendants did not appear; and for want of an appearance an interlocutory decree was taken against them on the 29th of April, 1879. After proof taken, a final decree was passed on the 10th of June, 1879, for the sale of the mortgaged premises, upon default of payment of the mortgage debt, interest and cost, by the day fixed in the decree. The proceedings were taken and conducted as upon a mortgage deed in all respects regular and perfect, and the instrument was so treated by the decree, though it now appears that the instrument was defective for want of seals of the parties signing it. This defect in the mortgage instrument was nowhere adverted to in the proceedings. By the decree it was adjudged that the property mentioned be sold for the payment of the mort-

gage debt, and that upon such sale made, and the ratifica-
tion thereof, and the full payment of the purchase money,
the trustee, "by a good and sufficient deed, to be exe-
cuted and acknowledged agreeably to law, should convey
to the purchaser of said property, &c., the property to him
sold, *free, clear and discharged of all claim of the parties
to this cause, and of any person or persons claiming by,
from or under them."*

The sale under this decree was made on the 13th of
September, 1879, to Frederick Minke, and which sale was
duly reported to the Court, and was finally ratified on the
3rd day of January, 1880 ; and though the purchase money
appears to have been paid, it does not appear that there
was any deed made to the purchaser by the trustee.  And
if such deed was not in fact made, even though the decree
had been passed upon a perfect legal mortgage, the effect
of the sale and the payment of the purchase money would
only be to invest the purchaser with the mere equitable
estate in the premises sold, and not the legal title.  *Mas-
sey vs. Massey's Lessee*, 4 *H. & J.*, 141.  And as a gen-
eral principle, with some few well-defined exceptions, to
enable the defendant in ejectment to defend his possession
successfully, either upon his own title or the title of a third
party, that title must, as a general rule, be shown to be a
good and subsisting legal title, and superior in law to
that set up by the plaintiff; for otherwise it opposes no
legal bar to the right of the plaintiff to recover.  *Hickey's
Lessee vs. Stewart, et al.,* 3 *How.,* 750.  Here, as we have
seen, the decree under which the property was sold to
Minke, under whom the defendant's wife claims title, re-
quired a deed to be made to the purchaser by the trustee ;
and as it is clear that such case is not embraced within
that provision of the Code which gives the decree the op-
eration of a deed (*Code, Art.* 16, *sec.* 67, codified from the
Act of 1785, ch. 72, sec. 13,) there was no such title con-
veyed to the purchaser under the decree as would enable

him or those claiming under him, to defend as against the legal title asserted by a third person not a party to or bound by the decree.

But what was the effect of the pending proceedings for the sale of the mortgaged property, and the decree subsequently passed for such sale, upon the title attempted to be conveyed by McDonald and wife to Haley, by the deed of the 11th of April, 1879, and the subsequent deed of Haley to the plaintiff, of the 28th of September, 1883 ?

The doctrine of *lis pendens* has been briefly but most clearly stated by Sir WILLIAM GRANT, in the case of *The Bishop of Winchester vs. Paine,* 11 *Ves.* 197. In that case it was said, that "Ordinarily, it is true, the decree of the Court binds only the parties to the suit. But he, who purchases during the pendency of the suit, is bound by the decree that may be made against the person from whom he derives title. The litigating parties are exempted from the necessity of taking any notice of a title so acquired. As to them it is as if no such title existed. Otherwise, suits would be indeterminable; or, which would be the same in effect, it would be in the pleasure of one party, at what period the suit should be determined. The rule may sometimes operate with hardship upon those who purchase without actual notice; yet general convenience requires its adoption; and a mortgage taken *pendente lite,* cannot be exempted from its operation."

The *lis pendens* is presumptive, if not actual notice; and the purchaser is in the same situation in which the vendor stood. *Stockett vs. Goodman, Adm'x,* 47 *Md.,* 54, 60. This is the principle that runs through all the cases, both at law and in equity. In the case of *Metcalfe vs. Pulvertoft,* 2 *Ves. & B.,* 200, 205, the Vice-Chancellor, in reviewing the authorities, said: "In a real action, notwithstanding a conveyance pending the suit, the defendant is treated, with reference to the execution, as if he remained a party. So upon the writ of mesne, in the 2d *In-*

*stitute, p.* 376.   The judgment in the real action will over-reach an alienation pending the writ; as, if the alienation had any effect to defeat the judgment, it would have all the effect I have stated.   The authorities establish this proposition, that alienation, pending a suit, gives no new right, and does not vary the rights of the litigating parties.   The alienation of the defendant, for the purposes of that cause, has no effect as against the plaintiff, who is entitled to proceed, as if no such title existed."

The principle of these decisions has been fully incorporated by *Story* and *Sugden* in the text of their works, as settled doctrine; (1 *Sto. Eq. Jur., secs,* 405, 406; 2 *Sugd. on Vend & P.,* 7*th Am. Ed.,* 544, 546;) and the former Court of Appeals of this State, in the case of *Inloes' Lessee vs. Harvey,* 11 *Md.,* 519, applied the doctrine thus stated, in an action of ejectment, as a bar to the right of a purchaser *pendente lite* to recover as against a party holding under a decree of a Court of equity.   If, therefore, the title acquired by Haley, the party under whom the plaintiff claims title, was subject to the *lis pendens,* and is to be regarded as of no greater effect than if it had never existed, so far as the operation of the decree and the sale thereunder are concerned, it would seem to follow that the subsequent deed by Haley to the plaintiff, of the 28th of September, 1883, could convey no better title than that acquired by Haley himself.   Moreover, the proceedings being for the sale of mortgaged premises consisting of real estate, they were proceedings *in rem* (*Wood vs. Fulton & Starck,* 2 *H. & G.,* 72,); and the decree, and all the proceedings upon which it was based, and the proceedings had thereunder, are, by statute, required to be recorded ; and any person dealing with the subject-matter of the decree, must be taken to have had notice of the legal import and operation of all such proceedings.   *Code, Art.* 18, *secs.* 16 and 19.

Such then being the operation and effect of a *lis pendens,* the next question is, when does it commence to have

Sanders *vs.* McDonald.

effect upon the subject-matter of the suit, so as to bind the property in the hands of a purchaser *pendente lite?* And in regard to this question there would seem to be no diversity of opinion. The authorities all seem to concur in holding, that to constitute a *lis pendens* to bind a purchaser, a bill must not only be actually filed, having special reference to specific property, but that the *lis pendens* does not begin until the service of the subpœna upon the defendant. *Murray vs. Ballou,* 1 *John. Ch.* 566, 576; 2 *Sugd. on Vend. & P.*, 544. Here it is not shown at what particular time the subpœna was served,—whether before or after the deed from McDonald and wife to Haley. If the deed was in fact made before the subpœna was served, then the legal title to the property passed to the grantee unaffected by the subsequent decree for sale; but if there had been service of the subpœna before the deed was delivered, the grantee took subject to the operation of the decree. Therefore, unless the defendant can show that the deed to Haley was after the service of the subpœna upon himself as defendant in the equity suit, that deed conveyed the legal title to Haley, unaffected by the equity proceedings, and as against the mere equitable mortgage held by the Building Association.

But it is contended by the plaintiff that his title is not to be affected by *lis pendens*, even though it be shown that the subpœna was served before the deed to Haley, because the equity proceedings were apparently founded upon a perfect legal mortgage, instead of a mere equitable mortgage (the mortgage instrument being without seals); and that the proceedings ought to be such as to furnish notice of the true nature of the title sought to be affected by the decree. This contention, however, cannot be sustained. The Court in which the proceedings were instituted is one of general equity jurisdiction, and it had complete jurisdiction over the subject-matter, whether the instrument upon which the proceedings were taken be

regarded either as a legal or only an equitable mortgage. The decree sought and obtained was for the sale of the particular property for the payment of the mortgage debt. The mortgage instrument, though defectively executed, certainly created a charge upon the property as between the parties; and a sale of the property for the payment of the debt was the object of the proceedings. The proceedings conveyed notice of these facts; and any person becoming purchaser of the property from the defendants *pendente lite* became bound by the decree as if he were defendant. And though the proceedings may have been, and doubtless were, erroneous in treating the instrument as a regular legal deed of mortgage, the Court having full jurisdiction, the validity or correctness of the decree cannot be questioned in a merely collateral suit. The only mode of correcting the error was by an appeal, or by bill of review; and as neither of those remedies was resorted to, the decree must stand for what it professes to be, and with the same binding force as if the proceedings upon which it is founded had been in all respects free from error. This is the well settled doctrine in this Court, and elsewhere. *Comegys vs. The State,* 10 *Gill & J.,* 175, 183; *Cockey vs. Cole,* 28 *Md.,* 276; *Schley vs. Mayor, &c., of Baltimore, et al.,* 29 *Md.,* 34; *Long, et al. vs. Long, et al.,* 62 *Md.,* 33; *Thompson vs. Tolmie,* 2 *Pet.,* 157.

The plaintiff, however, contends that though it be true that his title was acquired subject to the decree in the equity case against McDonald and wife, yet as the wife joined McDonald in the deed to Haley, the wife would be thereby estopped to assert title by virtue of the deed to her from Minke, the purchaser under the decree; and that, as the wife would be estopped, the husband is equally estopped to set up such title in his wife, as a defence to the action. But such position is not tenable. It is shown by the agreed statement of facts that the property was owned by the husband McDonald, and therefore the wife only joined in

the deed to Haley to extinguish her contingent or inchoate right of dower in the property conveyed. There is nothing on the face of the deed to operate an estoppel as against her. She was only a party to the deed for the special purpose of relinquishing her contingent right of dower; and that being the case, she did not profess to convey a real subsisting estate, and, in legal contemplation, she had none to convey; and if the deed of the husband for any cause was rendered inoperative, her contingent right of dower remained unaffected. *Reiff vs. Horst, et al.,* 55 *Md.,* 42; *Clowes vs. Dickenson,* 5 *John. Ch.,* 235, 247; 2 *Scrib. on Dow.,* 294. Clearly, there is nothing in the deed, either in its terms or by legal operation, that would preclude the wife from setting up and relying upon her after acquired title; and if she can rely upon such title, there can be no reason why the husband, holding under or for her, may not also rely upon such title in his wife, against the claim of the plaintiff to recover in this action. 3 *Washb. Real Prop.,* (3rd Ed.,) 99.

It follows from what we have said that there was error in the judgment of the Court below, and such judgment must be reversed, and the cause be remanded for re-trial.

*Judgment reversed, and*
*new trial awarded.*

(Decided 15th May, 1885.)