## PERRY *v.* SWEENY.

ORPHANS' COURT; PROBATE OF WILL OF ·PERSONALTY AND·
REALTY, EFFECT OF; EJECTMENT.

An order of the Orphans' Court of this District admitting a will of
personalty and realty to probate after a trial by jury of con-
tested issues certified to the Circuit Court, is not conclusive as
to the realty when offered in evidence by the devisees, in a
subsequent action of ejectment between the same parties; the
Orphans' Court having no jurisdiction over the devise of real
property.

No. 718. Submitted October 8, 1897. Decided November 4, 1897.

HEARING on an appeal from an interlocutory order (leave
to appeal having been specially allowed) sustaining a de-
murrer to a plea of *res judicata* in an action of ejectment.
*Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from an interlocutory order of the
Supreme Court of the District, in an action of ejectment,
allowed by order of this court under the authority conferred
by Section 7 of the act establishing the Court of Appeals
and defining its jurisdiction.

The appellee, Mary E. Sweeny, as plaintiff below, brought
the suit to recover certain parcels of land in the city of Wash-
ington, claiming title thereto as heir-at-law of Michael Crane,
deceased.

The defendants, R. Ross Perry and The National Safe
Deposit, Savings and Trust Company of the District of Colum-
bia, entered a special plea in bar alleging the following in
substance: That Michael Crane died leaving a will, duly
executed, wherein, after appointing defendants his executors,
he devised to them, in fee simple, the lands sued for. That
the will was by them regularly offered for probate in the

Supreme Court holding a special term for Orphans' Court business. That plaintiff filed a *caveat* therein denying the execution of the said will, and charging that the testator was of unsound mind, and had been unduly influenced, and so forth. That plaintiff then prayed the said court to direct issues, embodying the said grounds of contest, to be sent to the special term holding the sessions of the Circuit Court for trial by a jury. That the issues were so transmitted, and the trial had thereof resulted in a verdict, upon each one, in favor of the defendants, which having been duly certified to the special term holding the Orphans' Court, that court entered a decree admitting the will to probate in solemn form. That said decree remains in full force, and is conclusive of the validity of the will and the title of defendants thereunder.

To this plea the court sustained the plaintiff's demurrer; and the appeal is from that order.

*Messrs. R. Ross Perry & Son* for the appellants:

1. Under the provisions of the Seventh Amendment of the Constitution, where parties litigant have raised a certain issue in a court competent to decide that issue, and have had that issue tried in a common-law court of record, before a common-law jury, under the instruction and control of a judge of that court, neither of them can again litigate that question, save according to the course of the common law.

The meaning of the controlling words of this amendment has been determined by sundry decisions of the Supreme Court to refer to suits at common law. *Parsons* v. *Bedford,* 3 Pet. 446; *Justices* v. *Murray,* 9 Wall. 227; *Railroad* v. *Chicago,* 166 U. S. 226; *Weston* v. *Charleston,* 2 Pet. 464; *Upshur County* v. *Rich,* 135 U. S. 467; *Ormsby* v. *Webb,* 134 U. S. 147; *Campbell* v. *Porter,* 162 U. S. 478.

These authorities establish that this proceeding is a suit at common law. And if so, then the conclusion must follow

that the facts found by the verdict of the jury in this case-
can not be re-examined in the Supreme Court of the District
of Columbia, which is unquestionably a court of the United
States, save in accordance with the rules of the common law.
*Van Ness* v. *Van Ness*, 6 How. 62.

2. Where certain issues are raised with respect to the validity
of a will which includes realty as well as personalty, and the
finding of a jury is had upon these issues, and the judgment
of the court entered thereupon, such judgment is a judg-
ment *in rem*, and is binding upon all the world. In the first.
place, it is to be noted than when an issue is once granted
the functions of the Orphans' Court, so far as that question is
concerned, are suspended until the finding of the jury be
certified, and when that is done the court has no discretion,
but is imperatively required to enter up judgment in con-
formity thereto. Where, on the application of one party, an
issue is transmitted to a court of law for trial, the granting,
on the application of another party, of substantially the
same issue, to be tried before another jury, is not allowed.
The Orphans' Court is bound to consider all testimony ad-
duced before it on the same subject which is not inconsistent.
with the finding of the jury; but so far as the facts covered
by the verdict are involved, they are settled unalterably by
it, and all other facts contrariwise are to be ignored. *Pegg*
v. *Warford*, 4 Md. 385; *Warford* v. *Van Sickle*, 4 Md. 397;
*Peters' administrator* v. *Peters*, 20 Md. 178; *Cecil* v. *Cecil*, 19
Md. 72; *Browne* v. *Browne*, 22 Md. 103; *Worthington* v.
*Giddings*, 56 Md. 542, 549; *Van Ness* v. *Van Ness*, 6 How. 68;
*Jones* v. *Hodges*, 62 Md. 525.

2. As to the effect of the judgment of the court admitting
a will to probate and record with respect to issues that were
not raised, the decisions of the Supreme Court in the follow-
ing cases are conclusive: *Cromwell* v. *County of Sac*, 94 U. S.
351; *Davis* v. *Brown*, 94 U. S. 423. The judgment of the
court is to operate as an estoppel not only upon the ques-
tions that were actually raised, but also upon those that

might have been raised wherever the question is concerning the exact subject-matter. The plaintiff in this case was the caveator in the proceedings before the Orphans' Court. The issues which she raised there were the same issues which she raises here. Any other issues which she might raise here, she could have raised there. So that, on elementary principles of law, the plaintiff here is estopped from raising any question whatever, about the validity of this instrument, which she could have raised when this very question was the one in issue.

3. The Maryland cases bearing upon the particular question, which, of course, do not take into consideration the constitutional amendment, are the following: *Warford* v. *Colvin,* 14 Md. 532; *Cheveront* v. *Textor,* 53 Md. 295; *Jones* v. *Hodges,* 62 Md. 525.

*Mr. J. Altheus Johnson, Mr. Charles A. Keigwin* and *Mr. Mr. J. M. Wilson* for the appellee:

1. The Orphans' Court of the District of Columbia is utterly without jurisdiction to take probate of wills as an instrument of title to real estate. This proposition is not open to question, but is effectually settled by the Supreme Court of the United States. *Robertson* v. *Pickrell,* 109 U. S. 608; *Campbell* v. *Porter,* 162 U. S. 478.

2. That the proceedings of an Orphans' Court, when it is without jurisdiction to take probate of wills of real estate, have no effect whatever upon the will as a muniment of title to land left by the decedent, even as between the parties to the proceedings, is supported and also illustrated by the following cases: *Den* v. *Ayres,* 13 N. J. L. 153; *Smith* v. *Bonsall,* 5 Rawle, 80; *Rowland* v. *Evans,* 5 Pa. St. 435; *Bogardus* v. *Clarke,* 1 Edw. Ch. 266; *Bowen* v. *Sweeny,* 89 Hun, 359; *Warford* v. *Colvin,* 14 Md. 534; *Crosland* v. *Murdock,* 4 McCord, 217.

The principles that the cases above cited apply were long ago recognized as well established at the common law.

*Hume* v. *Burton*, 1 Ridgway P. C. 277; *Montgomery* v. *Clark*, 2 Atk. Ch. 379; *Dawson* v. *Choter*, 9 Mod. 90.

The Maryland act of 1798, which is the statute that determines the jurisdiction in this District of the Orphans' Court, and likewise the effect of probate, was expressly considered by the Supreme Court of the United States in the case of *Darby* v. *Mayer*, 10 Wheaton, 465, 470; and the court held in the ejectment proceedings then before it that a decree of probate under that act did not in anywise establish or affect the will as an instrument of title to land in Maryland, declaring that such a decree was not "evidence in a land cause in the courts of that State."

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The question presented for decision is this: Whether, after a contest and in pursuance of the verdict of a jury found upon issues duly certified to the Circuit Court, a will shall have been admitted to probate in the special term for Orphan's Court business, the decree thereof shall be held to be conclusive in an action of ejectment between the same parties, wherein the said will is offered as evidence of title by the devisees?

From a very early day in England, the ecclesiastical courts had exclusive jurisdiction over wills of personalty; but there was no such thing as the probate of a devise of real estate. Such a will was always open to dispute when offered in an action of ejectment as evidence of title.

Where a will had been admitted to probate before the ordinary because it passed personal estate as well as realty, that probate did not make it even *prima facie* evidence of title to land, and it was required to be proved, and was subject to attack in an action of ejectment in the same manner as a deed or other conveyance of title. "We all know," said Mr. Justice Story, "that in England the distinction has been constantly maintained that the probate of a will by the proper ecclesiastical court is conclusive as to personalty,

but that it is not evidence as to real estate. The reason is that the ecclesiastical courts have no jurisdiction whatsoever except over wills of personal estate, and therefore the probate thereof, by the sentence or decree of those courts, is wholly inoperative and void except as to personal estate. The validity of wills of real estate is solely cognizable by courts of common law, in the ordinary form of suit; and the verdict of the jury in such suits and the judgment thereon, are, by the very theory of the law, conclusive only as between the parties to the suit and their privies." *Tompkins* v. *Tompkins,* 1 Story C. C. 547, 552. In that case, it is true, the probate was held to be conclusive because of the change of rule made by the statute of the State of Rhode Island, under which the case arose.

The rule, above stated, prevailed in the States of the Union receiving and adopting the common law, until such time as their special tribunals of probate jurisdiction were expressly empowered to admit wills to probate for all purposes. *Harrison* v. *Roman,* 3 Wash. C. C. 580, 582; *Smith* v. *Bonsall,* 5 Rawle, 80, 83; *Rowland* v. *Evans,* 6 Pa. St. 435, 440; *Crosland* v. *Murdock,* 2 McCord, 217; *Bogardus* v. *Clark,* 1 Edw. Ch. 266; S. C. 4 Paige Ch. 623, 626; *Den* v. *Ayres,* 13 N. J. L. 153; *Parker* v. *Parker,* 11 Cush. 525; *Ballow* v. *Hudson,* 13 Gratt. 676.

Considering the prevalence of that salutary rule of the common law, and of all enlightened systems of jurisprudence, that a thing once solemnly adjudicated in a court having jurisdiction of the case, shall not again be open to litigation between the same parties and their privies, the peculiar jurisdiction of the ecclesiastical courts in England, and their successors in this country, produced this anomalous condition: that a will disposing of both personal and real property might be sustained in the court of probate and made conclusive in respect of the personalty, and yet be subsequently set aside in a court of common law, so far as the real estate is concerned, upon the very issue of ca-

pacity that had been adjudicated in the former. It is the logical result, however, of the condition that each court had a jurisdiction which was entirely exclusive of the other in respect of the separate and distinct interests affected by the same will.

In 1785 Lord Chief Baron Yelverton, referring to this situation, said : "I believe no two acts can be supposed to be more intimately connected with each other, both in unity of time and of assurance, than a will of real and personal estate, written upon one and the same piece of paper or parchment, and subscribed by one and the same signature. And yet it is clear law that, though the probate of such a will is conclusive evidence of the sanity of the testator to make such a will, yet it is by no means conclusive evidence of his capacity to dispose of his real estate. And why? Evidently because the capacity of the party to do the two acts is triable by different jurisdictions. . . . From all which I am warranted to lay it down as a general position,-that the capacity of a party to do one act is not conclusive of his capacity to do another, if his capacity as to that other be triable by a different jurisdiction, whether the two acts make one and the same assurance or are done at one and the same time or not." *Hume* v. *Burton,* 1 Ridgeway P. C. 277.

Nearly half a century before (A. D. 1742), Lord Chancellor Hardwicke had denounced this frequent result of a divided and independent jurisdiction as a "very great absurdity." He said, among other things : "I wish gentlemen of ability would take this inconvenience and absurdity into their consideration, and find out a proper remedy by the assistance of the legislature." *Montgomery* v. *Clark,* 2 Atkyns, 379. The invocation of the Lord Chancellor remained unheeded in England until 1857; and to this date, though reinforced by the example of the States generally, if not universally, has had no effect upon legislation for the District of Columbia.

This was the state of the law when Maryland, in 1798, enacted the general statute relating to the jurisdiction of the Orphans' Court, that, with immaterial changes, is the law of the District of Columbia to-day. The regular Orphans' Court, continuing as it had been received from Maryland at the cession of the District, was abolished by act of Congress in 1870, but its powers were required to be exercised by a justice of the Supreme Court of the District, holding a special term for the purpose; and it was expressly declared that "all laws and parts of laws relating to said Orphans' Court, so far as they are applicable to said Supreme Court, are hereby continued in force." 16 Stat. 161; Compiled Stat. D. C. 300, Secs. 47, 48.

The act confers jurisdiction over the probate of wills of personalty, and requires them to be probated, and no mention is made of wills of real property. To make emphatic the limited nature of the powers of the Orphans' Court it is declared that: "The said Orphans' Court shall not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly given by this act or some other law." Chap. 101, Subch. 15, Sec. 10.

The act was changed in Maryland, in some important particulars, and there is but one decision bearing directly on this point by the Court of Appeals of that State. There it was held that the existence and validity of a will, in so far as it disposed of real estate, are not proved by the record of the probate in the Orphans' Court, but are open for trial in an action of ejectment, notwithstanding the decree of that court. *Massey* v. *Massey*, 4 H. & J. 141, 145, 148. And see *Walford* v. *Colvin*, 14 Md. 532; *Jones* v. *Hodges*, 62 Md. 525.

The statute came before the Supreme Court of the United States quite early, and it was held that the jurisdiction affected the title of personalty only. *Darby* v. *Mayer*, 10 Wheat. 465, 470. Many years after, in a case arising in the District of Columbia, the same court said: "By the law of Maryland, which governs in the District of Columbia,

wills, so far as real property is concerned, are not admitted to probate. The common law rule prevails on that subject. The Orphans' Court there may, it is true, take the probate of wills, though they affect lands, provided they affect chattels also, but the probate is evidence of the validity of the will only so far as the personal property is concerned. As an instrument conveying real property the probate is not evidence of its execution. That must be shown by the production of the instrument itself and proof by the subscribing witnesses, or, if they be not living, by proof of their handwriting." *Robertson* v. *Pickrell,* 109 U. S. 608, 610.

This court was of the opinion in *Barbour* v. *Moore,* 4 App. D. C. 535, 545, that the act of Congress of July 9, 1888 (26 Stat. 246), had the effect to make the probate of a will in the Orphans' Court, disposing of both personal and real property, *prima facie* evidence of its contents and execution. But this view of the effect of that act has since been denied by the Supreme Court of the United States. *Campbell* v. *Porter,* 162 U. S. 478, 489. In the opinion in that case Mr. Justice Gray reviews the legislation of Maryland and the District, and the cases arising thereunder, and says, " Neither the Supreme Court of the District of Columbia, nor its predecessor, the Orphans' Court, had any jurisdiction to admit to probate a will of real estate only ; and consequently, no record in any court of the District of a probate of a will would be any evidence of title to real estate."

Those decisions ought to be regarded as decisive of the entire question, as here presented, without further discussion. But as the question is one of importance, we think it proper to consider a contention, on behalf of appellants, which, conceding the want of probative virtue to the mere decree of the Orphans' Court admitting a will to probate that disposes both of personal and real property, so far as the latter is concerned, strenuously asserts that a different rule must apply, in a case like this, where the will has been established by the verdict of a jury in a court of common

law upon issues joined between the same parties. As we have seen from the substance of the special plea set forth above, the appellee came voluntarily into the Orphans' Court, filed her *caveat,* presented all the issues that could be raised in respect of the validity of the will, and procured their transmission to the Circuit Court for trial by jury. The verdict having gone against her on every issue, it is argued that the facts so found can not be "otherwise re-examined in any court of the United States than according to the rules of the common law," as is declared in the Seventh Amendment; and that unless the decree, giving effect to that verdict, shall be declared conclusive as between the same parties, the practical effect will be the re-examination of the verdict in disregard of the rule of the common law and in violation of the constitutional prohibition.

What constitutes a common law jury, and the effect of verdicts in courts of special jurisdiction in the District of Columbia, were discussed at length by this court in the cases of *United States, ex rel. Brightwood Railway Co.,* v. *ONeal,* and *Hof* v. *Capital Traction Co.,* 10 App. D. C. 205, and need not be considered here, for they are beside the question. Nor, for like reason, need the question be discussed in the light of the views expressed by the Supreme Court of the United States in respect of the right and the process of review in that court of decrees of the special term for Orphans' Court business, admitting a will to probate after contest and trial by jury. Suffice it to say, that it is settled that the controversy over the probate of a will is such a "case" as may be reviewed in that court, and that it must be carried there upon a writ of error; for not being a "case in equity," strictly, it could not be taken up by appeal. This is all that was decided in *Ormsby* v. *Webb,* 134 U. S. 47, 60, 65. See also *Campbell* v. *Porter,* 162 U. S. 478, 481; *Ellis* v. *Davis,* 109 U. S. 485, 497.

Had the judgment or decree of the Orphans' Court admitting this will to probate been taken for review in an appel-

late court, the verdict upon which it was founded would have been regarded as conclusive of the facts involved. But whilst the verdict would stand, in such case, upon the same footing as any other verdict in a common law court, it does not follow that the decree or judgment rendered thereon by the Orphans' Court, must have the conclusive effect, on all points involved, of a judgment of a court of general jurisdiction, or of that of the Orphans' Court itself, in so far as the personal estate shall be concerned.

The statute makes it the imperative duty of the justice holding the special term for Orphans' Court business, in all contested cases of probate, to transmit the issues, upon demand of either party, to the special term for the Circuit Court, for trial by jury; and the verdict therein found, when duly certified to the Orphans' Court, must be given effect by appropriate decree, that court having no power to set it aside or ignore it. Act of 1798, Ch. 101, Subch. 15, Sec. 17; Compiled Stat. D. C. 302, Sec. 55; *Price* v. *Taylor*, 21 Md. 363; *Pigg* v. *Warford*, 4 Md. 385, 394; *Warford* v. *Van Sickles*, 4 Md. 397; *Van Ness* v. *Van Ness*, 6 How. 62, 67.

No judgment is, or can be, rendered upon the verdict in the Circuit Court. *Van Ness* v. *Van Ness, supra*, p. 68. Not even a judgment of the costs of the trial can be given. *Hubbard* v. *Barcus*, 38 Md. 166, 174.

The duty and power of that court are fully exercised and exhausted by the trial of the issues so transmitted and the return of the verdict, duly certified, to the Orphans' Court. In the latter court the decree or judgment is passed and entered, and from it alone the appeal lies to this court, and through this court, the writ of error from the Supreme Court of the United States. *Olmstead* v. *Webb*, 5 App. D. C. 38, 44; *Ormsby* v. *Webb*, 134 U. S. 47.

The order admitting the will to probate, then, being in no sense the judgment of the Circuit Court, the operation of the verdict, through the order or decree giving it effect, must be regarded as limited by the jurisdiction of the Or-

phans' Court, which could extend no further than to establish the validity of the will in so far as it affected the disposition and title of personal property. If the decree had undertaken, by express recital, to go beyond this, it could have no binding effect whatsoever, because of this want of jurisdiction.

Again, the Circuit Court, acting merely in aid of the Orphans' Court in the determination of the issues requested to be tried by its jury, can only be regarded as exercising, *pro hac vice*, the jurisdiction of the Orphans' Court, and in consequence, the verdict ought to have the same effect and operation, and no more, as would be given to a verdict of a jury empanneled in the Orphans' Court itself, had it been so authorized by law.

This principle is applied in Maryland in the case of an appeal from the Orphans' Court to a court of general common law jurisdiction. *State, use of Stephenson* v. *Reigart*, 1 Gill, 1, 29; *Warford* v. *Colvin*, 14 Md. 556; *Frisby* v. *Parkhurst*, 29 Md. 58, 67. And the same result has been declared where the trial on appeal is *de novo* and by jury. *Crosland* v. *Murdock*, 4 McCord, 217.

In considering the effect of the verdict in this case, it must not be forgotten that the conclusiveness of a judgment or decree of a court of competent jurisdiction, where the parties and issues are the same, does not depend in any measure upon a trial by jury; and that a final judgment at law upon a demurrer to a declaration, or the findings of fact by the court where a jury has been waived, as well as a decree in equity, are as efficacious as a final judgment upon a verdict.

We can not escape the conclusion, arrived at by the learned trial justice upon the demurrer to the plea, that the question of the conclusiveness of the proceedings and decree set up in that plea depends solely upon the jurisdiction of the Orphans' Court in the premises, without regard to the issues, the parties, the trial, or the verdict in the Circuit Court.

The jurisdiction of the court whose judgment or decree is offered as a bar or an estoppel between the same parties in another controversy, is a necessary element of the rule as declared in the Duchess of Kingston's case, substantially as follows: The judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea, a bar, or evidence, conclusive between the parties upon the same matter, brought directly in question in another court; and the judgment of a court of exclusive jurisdiction, directly upon the point, is, in like manner, conclusive upon the same matter between the same parties, coming incidentally in question in another court for a different purpose. *Gelston* v. *Hoyt*, 3 Wheat. 246, 315, 321; *Stone* v. *United States*, 167 U. S. 178, 186, 189.

We think it plain, therefore, that the verdict, if it be considered at all, as well as the decree of probate, must be limited in operation strictly to the contest of the will as a will of personal property only, because of the entire absence of jurisdiction of the Orphans' Court over the devise of real property.

The effect is practically the same as if two separate wills were required by law, one for the disposition of personal and the other of real property. The establishment or the overthrow of one in a court of exclusive jurisdiction over it would have no relevancy in a proceeding involving the validity of the other in a court of exclusive jurisdiction over its subject-matter.

In such event there might be conflicting verdicts and judgments in the separate courts between the same parties upon the same facts. That a like result may follow, in this case, where there is but one will disposing of the two classes of property, constituting an anomaly in the law and even a "very great absurdity," to use the language of Lord Hardwicke, can not be permitted to affect our conclusion. The remedy for the mischief lies within the province of the legislature, and not of the courts. These can not make the law what they may think it ought to be; they can only de-

D. C.]                              Syllabus.

clare it, as they find it to exist, in application to a case submitted for their adjudication.

The interlocutory order sustaining the demurrer to the special plea will be affirmed, with costs to the appellee, and the cause remanded for further proceedings. It is so ordered.

*Affirmed.*