MARY ANN VAN NESS, PLAINTIFF IN ERROR, v. CORNELIUS P. VAN NESS, ADMINISTRATOR OF JOHN P." VAN NESS.

The act of Congress, passed on the 27th of February, 1801 (2 Stat. at Large, 103), authorizes a writ of error from this court to the Circuit Court for the District of Columbia in those cases only where there has been a final judgment, order, or decree in that court.

Where the Orphans' Court directed an issue to be sent for trial in the Circuit Court, which issue was, " whether the petitioner was the widow of the deceased or not," and the Circuit Court proceeded to try the issue, and the jury, under the instructions of the court, found that the petitioner was not the widow, exceptions to these instructions cannot be reviewed by this court on a writ of error.

The certificate of the finding of the jury, transmitted by the Circuit Court to the Orphans' Court, was not such a final judgment, order, or decree as is included within the statute. After the reception of the certificate, the Orphans' Court had still to pass a decree in order to settle the rights of the parties.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Columbia, sitting for the county of Washington.

All the circumstances of the case are fully set forth in the opinion of the court, as delivered by Mr. Chief Justice Taney, from the commencement of which the Reporter extracts the following statement.

A motion has been made to dismiss this case, which is brought here by writ of error directed to the Circuit Court for Washington county, in the District of Columbia.

The case is this. John P. Van Ness, of the same county and District, died intestate, and letters of administration were granted by the Orphans' Court to Cornelius P Van Ness, his brother, who is the defendant in error.

Shortly after the letters were granted, Mary Ann Van Ness, the plaintiff in error, filed her petition in the Orphans' Court, alleging that she was the widow of the deceased, and praying that the letters granted to the defendant should be revoked, and administration granted to her. The defendant answered, denying that she was the widow of the deceased. The right to the letters depended upon this fact; as by an act of Assembly of Maryland, passed in 1798, and adopted by Congress when it assumed jurisdiction over this District, the widow is

entitled to letters of administration, in preference to any other person, where the husband dies intestate.

This act of Assembly (1798, ch. 101, subchap. 8, sec. 20, and subchap. 15, sec. 16, 17) makes it the duty of the Orphans' Court, in a case like this, if required by either party, to direct an issue to be sent for trial to any court of law most convenient for trying it ; and the court to which it is sent is authorized to direct the jury, and to grant a new trial if it thinks proper, as if the issue were in a suit therein instituted ; and upon a certificate from such court, or a judge thereof, of the verdict or finding of the jury, under the seal of the court, the Orphans' Court is directed to give judgment upon such finding. It is unnecessary to give the words of the act. We state its provisions only so far as they relate to the case before us.

When the answer of the defendant came in, the Orphans' Court, upon the motion of the plaintiff, ordered the following issue to be made up and sent to the Circuit Court for Washington county, to be there tried ; that is to say, "whether the said Mary Ann Van Ness be the widow of the said John P. Van Ness or not." No depositions or other testimony were taken on either side in the Orphans' Court.

The Circuit Court proceeded to the trial of the issue, and in the course of the trial sundry directions were given to the jury, to which the plaintiff excepted ; and finally, as appears by the eleventh exception, the court instructed the jury that there was no evidence from which they could find that the plaintiff was lawfully married to John P. Van Ness, the intestate. Under this direction, the jury found by their verdict that Mary A. Van Ness was not the widow of the late John P. Van Ness ; and this finding was, by order of the court, certified under seal to the Orphans' Court.

This is the case before us, upon the record brought here by the writ of error ; and the question to be decided is, whether this court can take cognizance of the case, and inquire whether error has or has not been committed by the Circuit Court in giving the instructions under which the verdict was found.

The cause was argued upon a motion to dismiss the writ of error for want of jurisdiction. *Mr. Coxe* and *Mr. Bradley* for the motion, and *Mr. May* and *Mr. Brent* against it.

*Mr. Coxe*, in support of the motion, explained the laws of Maryland upon the subject, and referred to the act of 1798, in 1 Dorsey's Laws of Maryland, p. 414, subchap. 15, sec. 17, and also to p. 394, subchap. 8, sec. 20.

The certificate directed to be transmitted to the Orphans'

Court is altogether different from chancery practice, where the verdict is merely to inform the chancellor, who may set it aside and direct a new trial. *Mr. Coxe* referred also to the cases in 1 Peters, 562, 565 ; 2 Peters, 243 ; 5 Howard, 118 ; and 3 Howard, 681.

*Mr. May*, against the motion to dismiss.

The widow in this case filed a petition praying for letters of administration to herself, and for a revocation of those previously granted to the brother. If she was the widow, she was entitled to letters in preference to any one else. Act of 1798, chap. 101, subchap. 15, sec. 17 ; 2 Harris & Gill, 51.

After receiving the certificate from the Circuit Court, the Orphans' Court dismissed her petition. We took an appeal from this dismissal, but the Circuit Court affirmed it.

It is evident that the appeal carried up nothing but the mere certificate, and under it it was impossible again to bring before the Circuit Court the instructions which had been given at the previous trial. The Orphans' Court never saw these exceptions. If we could have got them into the record which was transmitted from the Circuit Court to the Orphans' Court, then an appeal from the order of dismissal would have carried them again to the Circuit Court and from that court to this. But we could not do it ; and if this writ of error should be dismissed, it will follow that instructions were given by the court below which were decisive of the result, and yet there is no mode of having such instructions reviewed by this court. The certificate either established or destroyed the claim, because it was conclusive upon the Orphans' Court. It was, therefore, a final order. The act of 1801 includes final orders. See 2 Statutes at Large, 106, sec. 8.

This court, in 6 Cranch, 235, decided that any final judgment, order, or decree might be brought up for review.

The act of 1801 has been pronounced comprehensive. 4 Cranch, 396 ; 8 Cranch, 252.

What are final orders? See 3 Dall. 404 ; 2 Peters, 464.

The tendency of decisions is to enlarge the power of appeal. 3 Miss. Rep. 328 ; 1 Stewart & Porter, 171 ; 1 Martin, N. S. 75 ; 4 N. H. Rep. 220 ; 2 Mass. Rep. 142 ; 4 Mass. Rep. 107, 108 ; 5 Mass. Rep. 194 ; 11 Mass. Rep. 275.

For the definition of a judgment see 3 Bl. Com. 296.

*Mr. Brent*, on the same side.

It is admitted by the other side, that she had a right to administer if she was the widow, and that this right was not lost by the fact, that letters had been issued to the brother

previous to her application. The power of the Orphans' Court to revoke letters cannot be questioned. The only point in issue was, whether she was or was not the widow. If the certificate of the Circuit Court had been that she was the widow, it might not have been a final order or judgment, because the Orphans' Court would still have to inquire whether she was competent in other respects to take out letters. For example, whether she was a resident, &c. But as the certificate was against her, it was conclusive of her rights. Mutuality is not necessary. Can there be any doubt of the certificate deciding the question as to her? The Orphans' Court are compelled to obey it. No case ever occurred in Maryland by which the opinion of her courts upon this point can be ascertained. A case did happen involving it; but before a certificate was sent to the Orphans' Court, a special act of the legislature was applied for and obtained in 1834 – 5. Under this act, the case was carried to the Court of Appeals, and is reported in 5 Gill & Johnson.

*Mr. Brent* then made the two following points: —

1. The power of the Circuit Court over this case, sent to it from the Orphans' Court, was as absolute, respecting a control over the jury and granting a new trial, as over a case which originated within itself.

2. The Orphans' Court had no control whatever over the verdict and judgment of the Circuit Court.

What appeal had we? The Orphans' Court could not review the proceedings of the Circuit Court, and yet it was a case where the verdict either established or destroyed the claim. If the present remedy is not applicable, then there is a strange anomaly here in Washington, — that there is no mode of correcting errors where very important rights are involved. The act of 1785, chap. 87, sec. 6, gave to a party aggrieved by any "judgment or determination" a right to appeal to the Court of Appeals. See Dorsey's Laws of Maryland. Can there now be, under our system, such a thing as a legalized error? See 5 Harris & Johns. 176. As to what is a final judgment in Maryland, see 2 Harris & Gill, 378; 12 Gill & Johns. 332.

The certificate was in effect a final order, and an appeal from a judgment opens all interlocutory orders. An instruction to a jury is a substitute for the old demurrer to evidence. 3 Peters, 37.

A writ of error must be upon a judgment which settles the whole matter. 11 Coke, 38; 21 Wendell, 658, 668; 1 Roll. Abr. 751. Pennsylvania decisions are, 3 Laws of Pennsylvania, 34; 1 Yates, 113; 2 Yates, 46, 51; 1 Binney, 444. Other cases respecting appeals, 7 Clark & Fin. 52.

The judgment in this case is final. 3 Binney, 276 ; Addison, 21, 121; 5 Howard, 214; 12 Wendell, 327 ; 2 Paige, 487 ; 19 Ves. 499 ; 2 Dan. Ch. Pr. 747, 1306, 1360 ; 1 Binney, 444 ; 5 Serg. & Rawle, 146 ; 6 Watts & Serg. 188.

The statute of Pennsylvania is the only one in all the States like that of Maryland ; and the courts of Pennsylvania have practically entertained appeals from such issues. If the substance appears in the record, this court will not regard forms, because, if it did, its jurisdiction would fluctuate, and it would be in the power of the court below to oust it of its proper jurisdiction. The right of appeal must exist or not exist when the bill of exceptions is taken, and cannot depend upon the mode in which the judgment is rendered.

The act of Congress mentions a final order. But here an order was necessary to direct the certificate to be transmitted to the Orphans' Court, and that order was final. If there are two judgments, one for dower and the other for damages, an appeal may lie from one, and not the other. Viner's Abr. tit. *Judgment*, letter P. T.

The Orphans' Court must dismiss our petition on the reception of the certificate. 2 Harris & Gill, 51.

But it is said on the other side, suppose we now succeed, and another trial takes place in the Circuit Court, with a different result, what is the Orphans' Court to do with these two different verdicts ? The difficulty is solved by referring to 10 Leigh, 572.

The act of Congress gives the same jurisdiction to this court in common law cases as in chancery. But in chancery an appeal will lie, although further proceedings may be necessary. 3 Barbour's Eq. Dig. 118, and cases there cited ; 3 Cranch, 179.

(That part of *Mr. Brent's* argument relating to the amount in controversy is omitted, the decision of the court not involving that point.)

*Mr. Bradley*, in reply, and in support of the motion to dismiss, maintained the following propositions : —

1. That a writ of error can be issued from this court only in cases provided by statute.

2. That it can be issued only upon a final judgment, according to the common law.

3. There has been no judgment, final or otherwise, in the Circuit Court.

4. That the words " order and decree," in the act of 1801, refer to proceedings in equity ; not to orders in a court of common law.

5. The statute of Maryland of 1798, chap. 101, gives to the courts of law a peculiar, special, and limited jurisdiction, and has not provided any mode for reviewing proceedings under that jurisdiction.

6. That no writ of error could lie to such a court, because there is no judgment of that court, final or otherwise.

In support of these propositions he cited Wilson *v.* Daniel, 3 Dall. 401; Rutherford *v.* Fisher, 4 Dall. 22; Boyle *v.* Zacharie & Turner, 6 Pet. 656, 657; Toland *v.* Sprague, 12 Pet. 331; Evans *v.* Gee, 14 Pet. 1; Amis *v.* Smith, 16 Pet. 303; Smith *v.* Trabue's Heirs, 9 Pet. 4; United States *v.* Goodwin, 7 Cranch, 108; United States *v.* Gordon, 7 Cranch, 287; United States *v.* Tenbroek, 2 Wheat. 248; United States *v.* Barker, 2 Wheat. 395; Sarchet *v.* United States, 12 Pet. 143; Mayberry *v.* Thompson, 5 How. 121; Ches. & Ohio Canal Co. *v.* U. Bank of Georgetown, 8 Pet. 259; Brown *v.* U. Bank of Florida, 4 How. 465; Winston *v.* Bank of United States, 3 How. 771; Judiciary Act of 1789, ch. 20, § 22.

Mr. Chief Justice TANEY delivered the opinion of the court. After stating the case, as above recited, the opinion proceeded as follows:

The appellate power of this court in relation to the Circuit Court for the District of Columbia is regulated by the act of Congress of February 27, 1801. And it authorizes the writ of error to the Circuit Court in those cases only in which there has been a final judgment, order, or decree in that court. Whatever errors, therefore, may have been committed, and however apparent they may be in the record, yet we have not the power to correct them unless the Circuit Court has passed a final judgment, order, or decree in the case before it.

The argument on the part of the plaintiff is, that inasmuch as the verdict was found in obedience to the positive instructions of the court, and as the certificate of the finding of the jury was conclusive upon the Orphans' Court, the order of the Circuit Court to certify the verdict to the Orphans' Court ought to be regarded as a final judgment or order within the meaning of the act of Congress.

It is true the Orphans' Court has no power to grant a new trial, and is bound to consider the fact to be as found by the jury; and consequently the judgment of that court must be against the plaintiff. But the matter in contest in the Orphans' Court is the right to the letters of administration. And it is the province of that court to apply the law upon that subject to the fact, as established by the verdict of the jury, and to make their decree accordingly; refusing to revoke the letters

granted to the defendant, and dismissing the petition of the plaintiff. The suit between the parties must remain still pending until that decree is pronounced. The certificate from the Circuit Court is nothing more than evidence of the finding of the jury upon the trial of the issue. It merely certifies a fact, that is to say, that the jury had so found. And the order of the Circuit Court, directing a fact to be certified to another court to enable it to proceed to judgment, can hardly be regarded as a judgment, order, or decree, in the legal sense of these terms as used in the act of Congress. Certainly it is not a final judgment or order. For it does not put an end to the suit in the Orphans' Court, as that court alone can dismiss the petition of the plaintiff which is there pending ; and no other court has the power to pass a judgment upon it. A verdict in any court of common law, if not set aside, is in all cases conclusive as to the fact found by the jury, and the judgment of the court must follow it ; as the Orphans' Court must follow the verdict in this case. Yet a writ of error will not lie upon the verdict.

And if this court should take jurisdiction, and should determine that the Circuit Court had erred in its directions to the jury, what judgment could be given here ? Could we give a judgment reversing an order which does nothing more than direct a fact to be certified to another court ? If we could do this, it would not reach the judgment in the Orphans' Court, nor exercise any control over it. And a writ of error can hardly be maintained where the judgment of the appellate court would be ineffectual and nugatory.

Neither could it make any difference as to the jurisdiction of this court, if there had been a feigned issue with formal pleadings, and the Circuit Court had entered a judgment upon the verdict. For the judgment would have had no effect upon the rights of either party to the administration in dispute, nor could it exercise any influence upon the decision of the Orphans' Court. And if this court could have regarded the feigned issue as an action regularly brought in the Circuit Court, and upon that ground have taken jurisdiction, the affirmance or reversal of the judgment would have had as little effect upon the proceedings in the Orphans' Court as the original judgment in the Circuit Court. It would, indeed decide the right to the fictitious wager stated in the pleadings. But if the judgment of the Circuit Court was reversed, and a *venire de novo* awarded, it would not alter the decree in the Orphans' Court. That court is required by law to act upon the finding of the jury, and not upon the judgment of the Circuit Court. And the reversal of that judgment and a new

finding would not authorize the Orphans' Court to recall the judgment it had given, and was bound to give upon the original verdict certified by the Circuit Court.

The act of Assembly of Maryland appears to have received in practice in that State the same construction that we have given to it. There is, indeed, no judicial opinion on the subject; but there is no ground for supposing that a writ of error was ever sued out under that law. In 1832, an act was passed authorizing a writ of error in such cases, and staying proceedings in the inferior courts until a decision was had in the appellate court; and this law embraces cases which had been tried before its passage, as well as those which should afterwards take place. But from 1798 down to the passage of this act of Assembly, we can find no trace of a writ of error sued out in a case like this. The absence of any such proceeding for so many years is the strongest evidence of the construction put upon the law, and of the opinion entertained by the bar of the State, that the writ would not lie. For many issues from the Orphans' Courts must have been tried during that period of time which would have given rise to the writ of error if it had been supposed to be warranted by the law. The act of 1832, also, embracing as it does prior as well as future cases, would have been altogether unnecessary, if a different construction had been given to the act of 1798.

Upon the whole, therefore, this court is of opinion that there has been no final judgment, order, or decree in the Circuit Court, and the writ of error must be dismissed for want of jurisdiction.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that this cause be and the same is hereby dismissed for want of jurisdiction.