# ORMSBY *v.* WEBB.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 179. Argued January 9, 10, 1890.— Decided March 3, 1890.

An order in the Supreme Court of the District of Columbia, at special term, admitting a writing to probate and record as the will of a deceased person, in conformity with the findings of the jury empanelled, in the same court, to try the issue of will or no will, is one involving the merits of the proceeding, and may be reviewed by the same court in general term, and such review will bring before the general term all the questions arising upon bills of exceptions taken at the trial before the jury: and if the value of the matter in dispute be sufficient, this court has jurisdiction to reëxamine a final order of the Supreme Court of the District of Columbia affirming the order of the Probate Court, and to pass upon the questions of law raised by such bills of exceptions. *Van Ness* v. *Van Ness,* 6 How. 62; and *Brown* v. *Wiley,* 4 Wall. 165, distinguished.

In the trial before a jury of an issue made up in a Probate Court as to the incompetency of a deceased person, from unsoundness of mind or undue influence, to make a will, declarations made by the deceased to a witness that he received the bulk of his estate by breaking the will of his grandfather, who was also the ancestor of the caveators, and that his estate consisted in a great degree of that property and its accumulations; and also declarations of one of the legatees, made about, or after the date of the execution of the alleged will, that she had knowledge at that time of the execution of the will and of its provisions, should be excluded from the jury.

On the trial of that issue it was proper for the jury to consider whether the undue influence alleged to have been exercised by a particular legatee in

respect to other matters extended to or controlled the execution of the will, and give it such weight as they might deem proper.

An instruction to the jury, at such trial, that if they should believe the evidence of a witness named, they must find for the will, while apparently objectionable, as giving undue prominence to the testimony of that witness, was held, in view of the scope of her evidence, not to have been erroneous.

THE case is stated in the opinion.

*Mr. John J. Johnson* and *Mr. William G. Johnson,* (with whom was *Mr. William Stone Abert* on the brief,) for plaintiffs in error.

*Mr. Enoch Totten,* (with whom was *Mr. William B. Webb* on the brief,) for defendants in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This writ of error brings up for review a judgment of the Supreme Court of the District of Columbia, in general term, which affirmed a final order of the same court, in special term, admitting to probate and record a certain writing as the last will and testament of Levin M. Powell, who died in the city of Washington on the 15th day of January, 1885. That instrument provided for the disposition of property of the value of more than one hundred thousand dollars.

At October term, 1886, of this court a motion was made that the writ of error be dismissed for want of jurisdiction, "because the judgment of the Supreme Court of the District of Columbia to which said writ of error was directed is not a final judgment;" and, in the alternative, that the judgment be affirmed because the writ of error was sued out merely for delay. That motion was overruled. *Ormsby* v. *Webb,* 122 U. S. 630. At the present term a second motion to dismiss was made; this time, upon the ground that the case is one of equity jurisdiction, and could be brought here only by appeal.

The history of this litigation, as disclosed by the record, is as follows:

Sarah C. Colmesnil, one of the heirs at law of the deceased,

presented to the Supreme Court of the District of Columbia,. holding a special term for probate business, a petition alleging that the above writing — previously presented to that court for probate by the persons named therein as executors — was not the last will and testament of Levin M. Powell; that by reason of his physical and mental condition he was incompetent to make a will; and that if his name was placed to that writing, it was not done by his will, but. by the procurement, undue influence and fraud of Harriet C. Stewart, one of the persons named therein as a legatee.

It was thereupon ordered that the following issues be transmitted to be tried in the circuit court before a jury:

"First. Whether the said paper-writing purporting to be the last will and testament of the said Levin M. Powell, bearing date on the 27th of October, 1884, was executed and attested in due form of law.

"Second. Whether the contents of said paper-writing were read to or by the said Levin M. Powell at or before the alleged execution thereof by him.

".Third. Whether the said Levin M. Powell at the time of the alleged signing of said paper-writing was of sound and disposing mind and capable of executing a valid deed or contract.

"Fourth. Whether the said writing was executed by the said Levin M. Powell under the influence of suggestions, importunities and undue persuasion of the said Harriet C. Stewart, or any other person or persons, when his mind, from its disordered, diseased and enfeebled state, was unable to resist the same.

"Fifth. Whether the execution of said paper-writing was procured by fraud, misrepresentation or undue influence or persuasion of the said Harriet C. Stewart, or any other person or persons acting of their own volition or under the direction of the said Stewart."

Subsequently, in the Supreme Court of the District, holding a circuit court, an order was made that upon the trial of the above issues before a jury, Mrs. Colmesnil and others who had filed caveats, should be plaintiffs, and Charles D. Drake and William B. Webb, as the proponents of the last will and testa-

ment of the deceased, and who were named as his executors, should be defendants.

The verdict of the jury consisted of answers to the above questions. The first, second and third were answered in the affirmative; the fourth and fifth, in the negative. A motion for a new trial having been overruled, the caveators prosecuted an appeal to the general term, which affirmed the action of the special term.

At a subsequent date the caveators filed in the Supreme Court of the District, holding a special term for what is called Orphans' Court business, the record of the trial of the issues submitted to the jury, and moved that the verdict be set aside upon the ground that the court trying those issues erred in rejecting competent testimony, in its instructions to the jury, in refusing to instruct the jury as requested by the caveators, and in rulings during the trial to which they took exceptions. This motion was overruled, and an order was made admitting the writing in question to probate and record as the will of Levin M. Powell, and directing letters testamentary to issue to the persons named therein as executors. From this last order an appeal was taken to the general term, which affirmed the order of the special term overruling the motion to set aside the verdict of the jury, as well as the order admitting the above writing to probate as the last will of the deceased.

The question raised by the first motion to dismiss for want of jurisdiction in this court, having been reargued, will be again examined in connection with the motion to dismiss upon the ground that the case, in any event, is one of equity cognizance to be brought here only by appeal. We do this because no opinion was delivered when this motion was overruled at a former term.

The defendants in error contend, in effect, that this court is without jurisdiction to review an order of the Supreme Court of the District, by virtue of which a writing is finally admitted to probate as the last will and testament of the person signing it, whatever may be the value of the matter in dispute. This, it is argued, results from the statutes regulating

the jurisdiction of the courts of the District, and the decisions of this court declaring their scope and effect.

The act of February 27, 1801, concerning the District of Columbia, 2 Stat. 103, created the Circuit Court of the District, with all the powers in such court and the judges thereof that were vested by law in the Circuit Courts and judges of the Circuit Courts of the United States, and with jurisdiction of all crimes and offences committed in the District, and of all cases in law and equity between parties, both or either of which shall be residents thereof. The eighth section of the act provided that "any final judgment, order or decree in said Circuit Court, wherein the matter in dispute, exclusive of costs, shall exceed the value of one hundred dollars, may be reëxamined and reversed or affirmed in the Supreme Court of the United States, by writ of error or appeal, which shall be prosecuted in the same manner, under the same regulations, and the same proceedings shall be had therein, as is or shall be provided in the case of writs of error on judgments, or appeals upon orders or decrees, rendered in the Circuit Court of the United States." The same act created an Orphans' Court in each of the counties of Washington and Alexandria, that should have the powers and perform the duties prescribed in reference to such courts in Maryland, appeals therefrom to be to the Circuit Court of the District, which should therein have all the powers of the chancellor of that State. § 12.

Among the statutes of Maryland then in force was the act of 1798, which authorized the Orphans' Court, whenever required by either party to a contest therein, to direct a plenary proceeding by bill or petition, to which there should be an answer on oath or affirmation, and which made it the duty of the court, when either party required it, to direct an issue or issues to be made up and sent to the court of law most convenient for trying the same. The act provided that such courts of law "shall have power to direct the jury, and grant a new trial, as if the issue or issues were in a suit therein instituted, and a certificate from such court, or any judge thereof, of the verdict or finding of the jury, under the seal thereof, shall be admitted by the Orphans' Court to establish or

destroy the claim or any part thereof;" also, that "the Orphans' Court shall give judgment or decree upon the bill and answer, or upon bill, answer, deposition or finding of the jury." 2 Kilty's Laws Md. c. 101, sub c. 8, § 20; Dennis' Probate Laws D. C. 67.

By the act of March 3, 1863, 12 Stat. 762, c. 91, the Circuit, District and Criminal Courts of the District were abolished, and the Supreme Court of the District was established with general jurisdiction in law and equity, and with the powers and jurisdiction then possessed and exercised by the Circuit Court. That act provided that one of the justices might hold a District Court of the United States for the District of Columbia in the same manner and with the same powers and jurisdiction possessed and exercised by other District Courts of the United States, and a Criminal Court with the same powers as were exercised by the Criminal Court of the District; that special terms of such Supreme Court should be held by one of the justices, at such time as the court in general term should direct, and by which non-enumerated motions in suits and proceedings at law and in equity, and suits in equity, not triable by jury, should be heard and determined, such justice, however, having the power to order any such motion or suit to be heard, in the first instance, at the general term; and that "any party aggrieved by any order, judgment, or decree, made or pronounced at any such special term, may, if the same involve the merits of the action or proceeding, appeal therefrom to the general term of said Supreme Court, and upon such appeal the general term shall review such order, judgment or decree and affirm, reverse, or modify the same, as shall be just." § 5. It also provided that "all issues of fact triable by a jury or by the court shall be tried before a single justice; when the trial is by a jury, at a Circuit Court; and when the trial is without a jury, at a Circuit Court or special term." § 7.

The eighth and ninth sections of that act are as follows:

"SEC. 8. If, upon the trial of a cause, an exception be taken, it may be reduced to writing at the time, or it may be entered on the minutes of the justice, and afterwards settled in such

manner as may be provided by the rules of the court, and then stated in writing in a case or bill of exceptions, with so much of the evidence as may be material to the questions to be raised, but such case or bill of exceptions need not be sealed or signed. The justice who tries the cause may, in his discretion, entertain a motion, to be made on his minutes, to set aside a verdict and grant a new trial upon exceptions, or for insufficient evidence, or for excessive damages : *Provided,* That such motion be made at the same term or circuit at which the trial was had. When such motion is made and heard upon the minutes, an appeal to the general term may be taken from the decision, in which case a bill of exceptions or case shall be settled in the usual manner.

"Sec. 9. A motion for a new trial on a case or bill of exceptions, and an application for judgment on a special verdict or a verdict taken subject to the opinion of the court, shall be heard in the first instance at a general term."

The next act of Congress having any bearing upon the question before us is that of June 21, 1870, which provides that the several general and special terms authorized by the act of March 3, 1863, " which have been or may be held, shall be, and are declared to be, severally, terms of the Supreme Court of the District of Columbia ; and the judgments, decrees, sentences, orders, proceedings, and acts of said general terms, special terms, circuit courts, district courts, and criminal courts, heretofore or hereafter rendered, made, or had, shall be deemed judgments, decrees, sentences, orders, proceedings, and acts of said Supreme Court : *Provided,* That nothing herein contained shall affect the right of appeal as provided by law." The same act abolished the Orphans' Court and invested the justice holding the special term of the Supreme Court for that purpose with the powers and jurisdiction then held and exercised by the former court, subject, however, to the provisions of the fifth section of the act of March 3, 1863, giving an appeal to the general term from any order involving the merits. 16 Stat. 159, 160.

The provisions of the acts of 1863 and 1870, so far as they regulate the jurisdiction and practice in the courts of this

District, are embodied in chapter 23 of the Revised Statutes of the District, without any material change.

When the Revised Statutes of 1874 were enacted, the jurisdiction of this court as to judgments or decrees of the Supreme Court of the District was thus defined: "The final judgment or decree of the Supreme Court of the District of Columbia, in any case where the matter in dispute, exclusive of costs, exceeds the value of one thousand dollars, may be reëxamined and reversed or affirmed in the Supreme Court of the United States, upon writ of error or appeal, in the same manner and under the same regulations as are provided in cases of writs of error on judgments, or appeals from decrees rendered in a Circuit Court." Rev. Stat. § 705. But by an act approved February 25, 1879, 20 Stat. 320, c. 99, such power of review was extended to cases where the matter in dispute exceeded the value of $2500, exclusive of costs; and by an act passed March 3, 1885, the amount was increased to $5000, with the reservation of the right of appeal or writ of error, without regard to the sum or value in dispute, in cases involving the validity of any patent or copyright, or in which is drawn in question the validity of a treaty or statute of, or an authority exercised under the United States. 23 Stat. 443, c. 355.

It is contended, on behalf of the appellees, that although this court has jurisdiction to reëxamine and reverse or affirm the final judgment or decree of the Supreme Court of the District of Columbia, in any case where the value of the matter in dispute, exclusive of costs, exceeds $5000, it has not jurisdiction to reëxamine the final judgment of that court, in general term, affirming an order of the same court, in special term, admitting a will to probate and record, although such final judgment and order, unless reversed, may affect the ownership or disposition of property of a greater value than that amount. And this view, it is argued, is sustained by the decisions in *Van Ness* v. *Van Ness*, 6 How. 62, 67, and *Brown* v. *Wiley*, 4 Wall. 165. We are of opinion that this point was neither involved nor decided in those cases.

Before examining those cases our attention will be first given to that of *Carter's Heirs* v. *Cutting*, 8 Cranch, 251. That was

an appeal, under the act of 1801, from a judgment of the Circuit Court of this District, affirming a judgment of the Orphans' Court of Alexandria County (which court had the same jurisdiction, and was created by the same act, as the Orphans' Court of Washington County), dismissing a petition filed for the revocation and repeal of the probate of a will. Two objections to the appeal were urged in this court: 1, That by the act of 1801 the Circuit Court had only the power of the chancellor of Maryland, and that by the laws of Maryland the decree of the chancellor was final; 2, That the decree of dismissal was not a final judgment, order or decree of the Circuit Court wherein the matter in dispute, exclusive of costs, exceeded $100. Mr. Justice Story, speaking for the court, said as to the first objection : "We are of opinion that the conclusiveness of its sentence forms no part of the essence of the powers of the court. Its powers to act are as ample, independent of their final quality, as with it. Besides, the act of February 27, 1801, § 8, has expressly allowed an appeal from '*all* final judgments, orders and decrees of the Circuit Courts,' where the matter in dispute exceeds the limited value, and there is nothing in the context to narrow the ordinary import of the language. We cannot admit that construction to be a sound one, which seeks by remote inferences to withdraw a case from the general provisions of a statute, which is clearly within its words and perfectly consistent with its intent. The case of *Young* v. *Bank of Alexandria*, 4 Cranch, 384, is, in our judgment, decisive against this objection." In reference to the second objection, it was said : "It is conceded by both parties that the estate devised to the respondent, Sally C. Cutting, is worth several thousand dollars. If, then, the probate of the will had any legal operation and was not merely void, the controversy as to the validity of that probate was a matter in dispute equal to the value of the estate devised away from the heirs." The decree of the Circuit Court in that case, dismissing the petition, was reversed, and the cause remanded to that court with directions to proceed to a hearing upon the merits. The Circuit Court was thus required to determine, upon its merits, the validity of the probate of a will.

The case of *Van Ness* v. *Van Ness* also arose under the act of 1801. It involved the question whether a particular person was the widow of an intestate, and upon that question depended the right of that person to have letters of administration granted to her. This issue, having been raised in the Orphans' Court, by petition, was, pursuant to the Maryland statute of 1798, sent to the Circuit Court, as originally established, for trial by jury. Under the instructions of that court a verdict was returned against the petitioner; and by its order the finding of the jury was certified, under seal, to the Orphans' Court, where the petition was dismissed. From that order a writ of error was brought, raising the question whether this court could take cognizance of the case, and inquire whether the Circuit Court erred in its instruction to the jury. Chief Justice Taney, speaking for the court, said (p. 67) : "It is true the Orphans' Court has no power to grant a new trial, and is bound to consider the fact to be as found by the jury ; and consequently the judgment of that court must be against the plaintiff. But the matter in contest in the Orphans' Court is the right to the letters of administration. And it is the province of that court to apply the law upon that subject to the fact, as established by the verdict of the jury, and to make their decree accordingly ; refusing to revoke the letters granted to the defendant, and dismissing the petition of the plaintiff. The suit between the parties must remain still pending until that decree is pronounced. The certificate from the Circuit Court is nothing more than evidence of the finding of the jury upon the trial of the issue. It merely certifies a fact, that is to say, that the jury had so found. And the order of the Circuit Court, directing a fact to be certified to another court to enable it to proceed to judgment, can hardly be regarded as a judgment, order or decree, in the legal sense of these terms as used in the act of Congress. Certainly it is not a final judgment or order. For it does not put an end to the suit in the Orphans' Court, as that court alone can dismiss the petition of the plaintiff which is there pending; and no other court has the power to pass a judgment upon it. A verdict in any court of common law, if not set aside, is in all cases conclusive as to

the fact found by the jury, and the judgment of the court must follow it; as the Orphans' Court must follow the verdict in this case. Yet a writ of error will not lie upon the verdict."

The case of *Brown* v. *Wiley* is to the same effect. That case arose upon a petition filed in the Orphans' Court before the act of 1863 was passed, raising the question whether the petitioner was a child of the intestate, and as such entitled to a certain fund in the hands of an administratrix. After that act was in force the issues were submitted to a jury empanelled in the Supreme Court of the District, at special term, and was determined in favor of the petitioner. A motion for a new trial, on exceptions duly taken, was heard at general term and overruled. The cause was then remanded with direction to proceed according to law. Thereupon an order was made that the finding of the jury be certified by the clerk to the Orphans' Court, which was still in existence. From that order a writ of error was brought, and this court, holding that it was not a final order, dismissed the writ. That this was the utmost extent of the decision is manifest from the following extracts from the opinion delivered by Chief Justice Chase, p. 70:

"The case, in almost every particular, is identical with that of *Van Ness* v. *Van Ness.* In that case, as in this, an issue of fact was sent out of the Orphans' Court to the Circuit Court to be tried by a jury; was tried and found in the negative. Exceptions were taken to the rulings upon the trial, and an order was made certifying the finding to the Orphans' Court. The proceeding was brought into this court by writ of error, which was dismissed for want of jurisdiction. . . . The order certifying the finding to the Orphans' Court, in the case of Van Ness, was identical in effect with the two orders overruling the motion for new trial, and certifying the finding in the case before us. In each case the exceptions taken at the trial before the jury were overruled, and nothing was left for action in the court before which the issues were tried; but the case went to the Orphans' Court for final judgment. In that case it was held that the order was not one which could,

under the act, be reëxamined on writ of error, and we see no reason for a different ruling in this."

Neither of the above cases involved the precise question now under examination. The decision in *Carter's Heirs* v. *Cutting* was, that the final order of the Orphans' Court, dismissing a petition which sought the revocation of the probate of a will, could be reviewed upon its merits in the Circuit Court, and that the final order of the latter court could be reëxamined in this court. The decision in both *Van Ness* v. *Van Ness* and *Brown* v. *Wiley* was, that an order by the Circuit Court in the first case, and by the Supreme Court of the District in the other case, which directed the finding of the jury to be certified, simply directed a fact to be certified, and, therefore, was not a final judgment, reviewable by this court. In none of the above cases did the question arise, whether a final order — made after the trial before the jury of the issue of will or no will — admitting to probate a paper presented as the last will of the decedent, was reviewable upon its merits; by the Circuit Court while the act of 1801 was in force, or by the Supreme Court of the District after the passage of the act of 1863. Nor did either of those cases involve any question as to the jurisdiction of this court to reëxamine a final judgment affirming an order of probate. The latter question is now, for the first time, presented for determination.

That an order in the Supreme Court of the District, at special term, admitting a will to probate and record is a final judgment, cannot, it seems to us, be disputed. It was so declared in *Van Ness* v. *Van Ness* and *Brown* v. *Wiley.* A will, admitted to probate and record by a court of competent jurisdiction, is a muniment of title for all receiving property under it; and, until the order so admitting it to probate is, by some appropriate proceeding, set aside or reversed, stands in the way of those who may have resisted the probate. In every sense, it is a final adjudication. And that an order of probate made in the Supreme Court of the District, special term, is reviewable by the general term is made clear by the provision that a party aggrieved by any order, judgment, or

decree in a special term, involving the merits of the action or proceeding, may appeal to the general term, which "shall review such order, judgment, or decree, and affirm, reverse, or modify the same as shall be just." Rev. Stat. D. C. § 772; 12 Stat. 763, c. 91, § 5. Clearly an order of probate, based upon a finding by the jury upon issues as to the competency of the testator to make a will, is one involving the merits. If so, how is it possible, in view of the express words of the statute, to question the jurisdiction of the general term to review such final order of probate?

In respect to the authority of this court to reëxamine the final judgments and decrees of the Supreme Court of this District, the words of the statute are quite as clear as those defining the jurisdiction of the general term to review the orders and judgments of the special term. It embraces the final judgment or decree of that court "in any case" involving a specified amount. It is true that this reëxamination must be upon writ of error or appeal "in the same manner and under the same regulations as are provided in cases of writs of error on judgments, or appeals from decrees rendered in a Circuit Court." But this language does not determine the nature of the "case" in the Supreme Court of the District, the final judgment in which is subject to reëxamination by this court. It only indicates the mode in which a case may be brought here for review. So that the only question is whether issues framed by the Supreme Court of the District, and which involve an inquiry as to whether the decedent was or was not incompetent, from unsoundness of mind or because of undue influence exerted upon him, to make a will — issues to which there are adversary parties — constitutes a "case," within the meaning of the act of Congress defining the jurisdiction of this court over the final judgments and decrees of the court below. If it does not, then it would follow that a proceeding in the Supreme Court of the District to revoke the probate of a will is a "case," the final judgment in which, as held in *Carter's Heirs* v. *Cutting,* may be reëxamined by this court, when the value of the matter in dispute is sufficient, while a proceeding in the same court involv-

ing the validity, as a last will and testament, of an instrument offered for probate, and, therefore, its admission to probate, is not a " case," the final judgment in which can be here reviewed. We cannot assent to this view. The latter proceeding is as much a " case " as the former. One involves the validity of the probate of a will, the other the validity as a will of a paper offered for probate. Upon the determination of each depend rights of property, and in each are adversary parties. There can be no reason why Congress should extend the jurisdiction of this court to proceedings involving the validity of the probate of wills, and not to proceedings involving the validity of an instrument offered for probate as a will. That the issues in the former may be heard and determined, in the first instance, without a jury, and upon evidence before a court, while the issues in the latter may, and if the parties require, must, be tried, in the first instance, by a jury, with the right in the parties to have bills of exceptions showing the rulings of the court, cannot affect the nature of the " case."

There are other decisions that throw some light upon the inquiry as to the jurisdiction of this court to reëxamine the final judgments or decrees of the highest court of this District. In the case of *Custiss* v. *Georgetown and Alexandria Turnpike Company*, 6 Cranch, 233, one of the questions was as to the jurisdiction of this court to review the final order of the Circuit Court for the District of Columbia quashing an inquisition taken by the marshal condemning land for a turnpike road. Its jurisdiction was maintained. By the words of the act constituting the Circuit Court of the District, this court was given jurisdiction to reëxamine " any final judgment, order or decree in said Circuit Court, wherein the matter in dispute, exclusive of costs, shall exceed the value," etc. These words, Chief Justice Marshall said, were " more ample than those employed in the judicial act." It will be found upon comparing the statute defining the jurisdiction of this court over the judgments and decrees of the Supreme Court of this District, with the statute of 1801 creating the Circuit Court of the District, that the words of the former are as broad and ample as the words of the latter. The jurisdiction

of this court extends to "the final judgment or decree of the Supreme Court of the District of Columbia, in any case," etc., while the words in the act of 1801 were " any final judgment, order or decree in said Circuit Court, wherein the matter in dispute," etc. In *Railroad Co.* v. *Church*, 19 Wall. 62, the jurisdiction of this court, to reëxamine the final order of the Supreme Court of this District confirming an inquisition of damages returned therein, and which was instituted before the marshal and a jury of the district, was sustained. The court said that its power to review the judgments and final orders of the Supreme Court of the District was as ample as its power over the final judgments, orders and decrees of the Circuit Court which it superseded. These two adjudications illustrate, to some extent, the nature of the cases from the courts of this District which may be reëxamined here, and show that the question now before us is to be determined by the acts of Congress defining the relations between this court and the highest court of this District, and not by reference to the statutes of Maryland, or to the statutes defining our jurisdiction to review the judgments of the Circuit Courts of the United States, held in the several States. And we may repeat here what Chief Justice Marshall said in *Young* v. *Bank of Alexandria*, 4 Cranch, 384, in which the main question was as to the power of this court to review the judgments of the Circuit Court of this District in a certain class of cases : "The words of the act of Congress being as explicit as language can furnish, must comprehend every case not completely excepted from them."

Whatever difficulties may have arisen, in cases like this, while there existed in this District a separate, distinct tribunal, having original cognizance of the probate of wills and the administration of the estates of deceased persons, cannot arise under existing legislation, which brings all such business within the cognizance of the Supreme Court of the District, and makes all orders, whether in its special or general term, the orders of that court. As was said in *Metropolitan Railroad Co.* v. *Moore*, 121 U. S. 558, 571, 573, the act of 1863 was the introduction into this District of a new organization of its

judicial system, under which all the courts previously existing here as separate and independent tribunals, having special and diverse jurisdictions, were consolidated into the new Supreme Court of the District of Columbia. For this reason, it was said that the new statutory provisions should be construed in the sense of the New York system, from which they were imported, rather than in the light of the jurisprudence of Maryland previously prevailing in this District. Referring to the clause in the Constitution declaring that no fact tried by a jury shall be otherwise reëxamined in any court of the United States than according to the rules of the common law, the court, speaking by Mr. Justice Matthews, said: "But that rule is not applicable as between the special and general terms of the Supreme Court of the District of Columbia as now organized. The appeal from the special to the general term is not an appeal from one court to another, but is simply a step in the progress of the cause during its pendency in the same court. The Supreme Court sitting at special term, and the Supreme Court sitting in the general term, though the judges may differ, is the same tribunal."

We are of opinion that an appeal to the general term from the final order of probate made in the special term, which is not based upon a judicial determination of facts, but merely upon the finding of a jury, of necessity, brings into review before the general term all the questions of law that are properly presented by the bill of exceptions taken at the trial. We say, of necessity, because: 1. The statute requires the Supreme Court of the District, at general term, to review, upon appeal, any order, judgment or decree of the special term, involving the merits of the action or proceeding. 2. The judgment of the special term admitting a will to probate and record, pursuant to the verdict of the jury upon issues relating to the competency of the deceased to make a will, clearly involves the merits of the controversy, because it establishes the validity as a will of the writing offered for probate. 3. The right of appeal to the general term from such a judgment of the special term would be of no value whatever, in most cases, unless the former could, upon such appeal, deter-

mine the questions of law properly presented in the bill of exceptions taken at the trial before the jury. It could not have been intended that an appeal to the general term from the order of probate should only involve an inquiry as to whether that order was in conformity with the verdict of the jury.

So an appeal to this court from the final judgment of the Supreme Court of the District, affirming the order of probate, of necessity, brings here for reëxamination all the questions properly arising upon those bills of exceptions. The presentation of the instrument in question for probate as the last will of the deceased, the division of the adversary parties into plaintiffs and defendants, the framing of the issues to be tried by the jury, the trial before the jury, the allowance of bills of exception, the motion for a new trial and the overruling of that motion, the admission of the will to probate, and the affirmance of the order of probate, all occurred, not, as under the old system, in different courts but in the same court — the Supreme Court of the District of Columbia. If this proceeding, in which there are adversary parties, and the issues in which involve rights of property exceeding in value the jurisdictional amount, be, within the meaning of the statute, as we hold it is, "a case" which has been finally determined by the Supreme Court of the District, our authority to determine the questions of law, properly raised, and which in the court below, in any of its divisions, controlled the right to have the will probated, cannot be affected by the circumstance that the original order of probate simply followed the finding of the jury, and was made by the court below, held by a single justice, not by the court in general term.

Nor is the question before us affected by the consideration that an order of the general term, merely affirming an order of the special term which overruled a motion for a new trial, where the finding of the jury is favorable to the caveatees, is not itself a final judgment. Such an order is, in legal effect, a direction that a judgment of probate be entered by the same court which denied the new trial. It is only when that judgment is entered in special term, and is followed by judg-

ment of affirmance in general term, to review which a writ of error is sued out, that the jurisdiction of this court attaches. And in exercising that jurisdiction, this court will not, as it was asked to do in *Van Ness* v. *Van Ness,* and in *Brown* v. *Wiley,* review simply the order directing the finding of the jury to be certified; but it will inquire whether the facts embraced in that finding were ascertained in conformity with law. If that inquiry is not to be fruitless we must regard the court, in which the facts have been found and certified, as a unit for the purposes of the writ of error. And when that court makes an order, in general term, which, under the statute, may be reëxamined here, the appeal therefrom brings up for review the questions upon which the final judgment really depends, namely, those presented by the bills of exception taken at the trial of the issues submitted to the jury. It would be strange, indeed, if our reëxamination of the final judgment of the Supreme Court of the District could not reach the errors of law which it may have committed in the conduct of that trial, and upon which that judgment is based.

For the reasons which have been stated we are of opinion that the motion to dismiss the writ of error for the want of jurisdiction in this court to review the judgment in question was properly overruled at a former term.

And we are of opinion that the last motion to dismiss, which proceeds upon the ground that this case is one of equitable cognizance to be reviewed here, if at all, only upon appeal, must also be overruled. It is, of course, undisputed that a final decree in equity, in the court below, cannot be reviewed here by means of a writ of error. But a proceeding involving the original probate of a last will and testament is not strictly a proceeding in equity, although rights arising out of, or dependent upon, such probate have often been determined by suits in equity. In determining the question of the competency of the deceased to make a will, the parties have an absolute right to a trial by jury, and to bills of exceptions covering all the rulings of the court during the progress of such trial. These are not the ordinary features of a suit in equity. A proceeding in this District for the probate of a

will, although of a peculiar character, is nevertheless a case in which there may be adversary parties, and in which there may be a final judgment affecting rights of property. It comes within the very terms of the act of Congress defining the cases in the Supreme Court of this District, the final judgments in which may be reëxamined here. If it be not a case in equity, it is to be brought to this court upon writ of error, although the proceeding may not be technically one at law, as distinguished from equity. The last motion to dismiss must, consequently, be denied.

We come now to consider the merits of the case as disclosed by the bills of exceptions taken by the caveators at the trial. The principal questions before the jury related to the alleged undue influence exerted upon the testator in the execution of the will, and to his capacity to make a disposition of his property according to a fixed purpose. Upon these points the instructions given, at the instance of the caveators, were certainly as full as they could have desired.

The first exception taken by them relates to the exclusion of evidence tending to prove that the decedent said to the witness that he received the bulk of his estate by breaking the will of his grandfather, who was also the ancestor of the caveators, and that his estate consisted in a great degree of that property with its accumulations. Argument is not needed to show that the manner in which the decedent acquired his estate was wholly immaterial upon the issue as to whether the paper in question was or not valid as his last will and testament.

The second and third exceptions refer to the exclusion of testimony tending to show, by the declarations of Mrs. Stewart, one of the principal legatees, made about or after the date of the execution of the will, that she had knowledge at that time of the execution of the will and of its provisions. The exclusion of this evidence was right. The proper foundation being laid, the declarations of Mrs. Stewart could have been proved for the purpose of impeaching or discrediting her testimony as a witness for the caveatees. But such declarations, not under oath, whenever made, were not competent for any

other purpose upon the trial of the issue as to competency to make a will. She was not the only legatee who was interested in the issues to be tried.

The fourth exception is based upon the refusal of the court to give this instruction: "In order to establish undue influence it is not necessary to prove the influence to have been exercised at the time of the execution of the will or with reference to that act; but if the jury believe from the evidence that the undue influence existed prior to and near the time of the execution of the will, they may infer that the will was executed under the continuance of such influence." It was not error to the prejudice of the caveators to refuse this instruction, for the reason, if there was no other, that the court had already, at their instance, fully instructed the jury upon the subject of undue influence. Upon the motion of the caveators the jury were instructed that if the alleged will or any part of it was obtained by undue influence they should find it in their verdict that it was so obtained; that it was not necessary, in order to prove that he was unduly influenced in the execution of the will, that the mind of the deceased be shown to be so weak as to render him incapable of attending to ordinary business; that it was material to inquire not only whether the will expressed his intention at the time of its execution but how that intention was produced; that influence obtained by flattery, importunity, threats, superiority of will, mind or character, or by what art soever that human thought, ingenuity, or cunning might employ, which would give dominion over the will of the deceased to such an extent as to destroy free agency or constrain him against his will to do what he was unable to refuse, was such influence as the law condemned as undue, when exercised by any one immediately over the testamentary act, whether by direction or indirection, or obtained at one time or another; and that if they believed, from all the facts and circumstances in evidence, that the alleged will was the result of an unsound mind or of the undue influence or importunities of the person or persons surrounding the alleged testator at the time of the execution thereof, or both, they should so say in their verdict.

Under these instructions the jury were at liberty to determine from all the evidence — that bearing directly on the execution of the will as well as that showing that the testator was, in respect to his affairs, generally under the control of others — whether in the execution of the will he was a free agent. This view disposes of the sixth exception, relating to the refusal of the court to instruct the jury that evidence that the legatee, Harriet C. Stewart, improperly influenced the testator as to other important matters and things than the execution of this will was proper to be considered as tending to show that she could and did improperly influence him to make the bequests in her favor or to exclude others of his next of kin and heirs at law from a participation in his estate. The evidence upon this subject was before the jury, and under the instructions given in determining the question whether the undue influence exercised by Mrs. Stewart in respect to other matters extended to or controlled the execution of the will, they could give it such weight as they deemed proper.

The instruction set out in the fifth exception was so manifestly wrong that it is unnecessary to give it special consideration.

The instructions contained in the seventh and eighth exceptions were properly refused upon the ground that the jury had already been instructed that it was both their right and duty to consider all the proof before them, and make such answer to the questions as the whole evidence justified.

The only remaining assignment of error to be noticed is that referring to the following instruction given by the court: "If the jury shall believe the evidence of Mrs. Harriet C. Stewart upon the subject of undue influence, given by her in this case, then the verdict must be in favor of the defendants and in support of the will." It is clear from the record that if Mrs. Stewart did not exercise undue influence over the testator there was no ground to suppose that any one else did, or to doubt the validity of the paper in question as a last will and testament. Her evidence covered the whole case so completely that, if the jury believed what she said, they were bound to sustain that paper as a valid will. With her evidence, taking

it to be true, the caveators had no ground upon which to contest the probate of the will. While this instruction is apparently liable to the objection that it gave undue prominence to the testimony of a single witness, we are not satisfied, looking at all the evidence, that the court erred in saying to the jury that if Mrs. Stewart told the truth, the case was for the propounders of the will.

Upon the whole case we do not perceive any ground upon which to disturb the finding of the jury.

*The judgment of the Supreme Court of the District, in general term, which affirmed the judgment in special term, admitting the paper in question to probate and record as the last will and testament of Levin M. Powell, must be affirmed, and it is so ordered.*

MR. JUSTICE GRAY, not having heard the whole argument, took no part in the decision.