## DUGAN *v.* NORTHCUTT.

ORPHANS' COURT; APPEALABLE ORDERS; ISSUES TO BE TRIED BY JURY; RES JUDICATA; ORDERS OF PUBLICATION.

1. An order of the Orphans' Court adjudging a party to have the right to have issues to determine the validity of a will transmitted to the Circuit Court for jury trial and framing and transmitting such issues, is not a final order, appealable to this court.
2. Issues once transmitted from the Orphans' Court and tried and determined by a jury, cannot be retried at the instance of another party.
3. A verdict is no less binding and conclusive because rendered upon total failure of proof, or upon wholly insufficient proof, than it would be when following upon contested testimony.
4. Where after a will has been probated and its validity contested on issues sent for jury trial, the validity of the proceedings cannot be successfully attacked by a new contestant upon the ground of an insufficient or defective publication of the notice of the application for probate of the will.

No. 507. Submitted November 6, 1895.   Decided December 3, 1895.

HEARING on an appeal from an order of the Orphans' Court adjudging the right of the appellee to have issues

framed to determine the validity of a will, and framing and transmitting such issues for jury trial. *Reversed.*

The COURT in its opinion stated the case as follows :

On March 7, 1893, one Annie E. Northcutt, otherwise known as Estella Horton, and also, it seems, as Kate Davis, and by various other names that indicated an irregular and unfortunate life, but whose original name was Kate or Catherine McGrane, departed this life in the city of Washington, possessed of a considerable estate, both real and personal, and leaving what purported to be a last will and testament, dated on February 26, 1892, whereby she bequeathed her personalty to her sister, the appellant, Mira Dugan, and her daughters, residents of Brooklyn in the State of New York, and devised her real estate to the appellant, Joseph H. McCann, with whom the deceased seems to have lived in her later years ; and Mira Dugan and Joseph H. McCann were named as executors.

Mrs. Dugan filed her petition in the Orphans' Court branch of the Supreme Court of the District of Columbia, in which she prayed for the probate of the will, renounced the executorship and asked for letters of administration with the will annexed to be granted to Messrs. Joseph Shillington and Edwin Forrest, members of the bar. In the petition the next of kin of the deceased were stated to be her two brothers, Lawrence McGrane, of Providence, in the State of Rhode Island, and John McGrane, of Brooklyn, in the State of New York, her sister, the petitioner, and a half-sister, Margaret Kelly, residing in Ireland. McCann seems to have taken no active part in the proceedings either at this time or at any other time, so far as is shown by the record now before us.

An order for publication in the usual form, notifying all persons in interest to appear and show cause against the probate, if any they had, was made by the justice of the Supreme Court of the District of Columbia then holding

the special term of that court for Orphans' Court business, which was directed to be published, and appears in fact to have been published for three successive weeks in "The Washington Law Reporter." Presumably in response to this notice, John McGrane, one of the brothers of the deceased and of Mrs. Dugan, appeared and filed a caveat to the will, and asked for issues thereon to be formulated and transmitted for trial by a jury. And about the same time, or soon afterwards, another document was deposited in the office of the Register of Wills for the District of Columbia, purporting to be a last will and testament executed by Kate Davis at Brooklyn, in the State of New York, on September 21, 1892, which was claimed to have been made by the same decedent under one of the numerous names which she bore. By this writing, which was attested only by two witnesses, the testatrix named in it purported to revoke all previous wills made by her, and to give two-thirds of her estate to her brother, Lawrence McGrane, and one-third to her brother, John McGrane. No executors are named in it, and there are some indications of incompleteness in the document.

We infer that application was also made by some one for the probate of this will; and that notice of the application, by way of the usual order of publication, was directed to be given not only, however, in the "Washington Law Reporter," but also in a newspaper published in the city of New York. But this does not directly appear in the record now before us; nor does it appear what further action, if any, was had with reference to this second alleged will and the application for its probate.

In pursuance of the caveat to the will of February 26, 1892, filed by John McGrane, issues were formulated, seven in number, and transmitted to the Circuit Court branch of the Supreme Court of the District of Columbia for trial by a jury, the caveator, John McGrane, being made the plaintiff, and the caveatees, Joseph H. McCann and Mira Dugan, being made the defendants. When they came on for trial, it

seems that the counsel for the caveator, McGrane, announced that he would offer evidence only under the seventh issue, which was whether the will of February 26, 1892, had been revoked; and in proof of revocation, he offered in evidence the Kate Davis will of September 21, 1892. The jury found in favor of the caveatees, thereby discrediting the alleged will of September 21, 1892. The seventh issue, therefore, was answered in the negative; and to the other issues, in the absence of all testimony, the presiding justice directed answers to be rendered in favor of the caveatees. The issues and the answers then were as follows:

1st. Was the paper-writing purporting to be the last will and testament of Annie E. Northcutt, deceased, bearing date February 26, 1892, executed and attested in due form of law? Answer: Yes.

2d. Were the contents of said paper-writing purporting to be the last will and testament of said Annie E. Northcutt, deceased, understood by or known to her at or before the alleged execution thereof? Answer: Yes.

3d. Was the said Annie E. Northcutt, at the time of execution of said paper-writing, of sound and disposing mind, and capable of executing a valid deed or contract? Answer: Yes.

4th. Was the execution of said paper-writing procured by undue influence exercised and practiced upon said Annie E. Northcutt by Mira Dugan or by Joseph H. McCann, or by any other person or persons? Answer: No.

5th. Was the execution of said paper-writing procured by fraud exercised and practiced upon said Annie E. Northcutt by the persons mentioned in the fourth issue or by either of them? Answer: No.

6th. Was the execution of said paper-writing the free and voluntary act of said Annie E. Northcutt? Answer: Yes.

7th. Was the said paper-writing, subsequent to its execution, altered or revoked by said Annie E. Northcutt, either in whole or in part; and if in part only, what part or parts were so by her altered or revoked? Answer: Not revoked in any way or part whatsoever.

These answers were certified to the Orphans' Court on or about June 30, 1893. What action was then had upon them, if any, does not appear from the present record; nor does it appear that any order or judgment was ever entered upon them.

The record next discloses to us a petition filed on August 25, 1893, by George H. Northcutt, the appellee in the proceedings now before us, wherein he alleged that he was the only child and sole heir at law of the deceased, Annie E. Nothcutt, and asked leave to file his caveat against the probate of the will of February 26, 1892, substantially upon the same grounds as had been alleged by John McGrane; and he prayed that issues thereon should be sent for trial by a jury. To this request objection was made on behalf of Mira Dugan and Joseph H. McCann, on the ground that the same issues now requested had been already tried and determined by a jury upon the caveat of John McGrane.

While the parties were contesting this point, it appears that in some way the question of the legitimacy of the petitioner Northcutt was raised, and that it was urged that on account of his alleged illegitimacy he was not entitled to have issues framed on his behalf in regard to the validity of the will. Thereupon, two issues upon this question of the legitimacy of the petitioner Northcutt were framed by the court and transmitted for trial by a jury. These issues were the following:

1st. Is George H. Northcutt, the caveator herein, the son of the said Annie E. Northcutt, born in wedlock?

2d. If the said George H. Northcutt, the caveator, was the child of the said Annie E. Northcutt, born out of wedlock, did his father afterwards intermarry with the said Annie and did his said father acknowledge the said George H. Northcutt as his son?

It is the record of the trial of these two issuses that constitutes the greater part of the record before us; and it is to the questions of law arising upon that trial that most of the arguments before us has been addressed.

To the first issue the jury returned their answer, yes ; to
the second, no ; and thereby; if their verdict stands, estab-
lished the legitimacy of the caveator, George H. Northcutt.
These answers were certified to the Orphans' Court about
April 22, 1895.

Next, we find that, on June 22, 1895, the justice then
holding the Orphans' Court made an order, wherein after
reciting that the jury by their verdict had found that the said
George H. Northcutt was the son of Annie E. Northcutt,
born in wedlock, he adjudged that said Northcutt had the
right to have issues sent from that court to ascertain the
validity of the alleged will of February 26, 1892, and ac-
cordingly adjudged and ordered that six certain issues
should be transmitted to the Circuit Court for trial by a jury.
These issues were as follows :

1st. Was the aforesaid paper-writing purporting to be the
last will and testament of Annie E. Northcutt executed and
attested by her according to law ?

2d. At the time of the alleged execution and acknowl-
edgment of said paper-writing, if the same was so executed
and attested, was said deceased of sound and disposing
mind and capable of executing a valid deed or contract ?

3d. If said paper-writing was so·executed by said Annie
E. Northcutt, deceased, were its contents known to the de-
ceased at the time of its alleged execution ?

4th. Was the said paper-writing, if it was executed by
the deceased, executed by her under undue influence aris-
ing from the importunities or other undue influence of
Mira Dugan, Joseph McCann, or both of them, or some
other person or persons?

5th. Was said paper-writing, if executed by said Annie
E. Northcutt, deceased, executed under threats, menace,
compulsion or under duress imposed upon deceased by Jo-
seph McCann, Mira Dugan, or either of them, or by any
other person or persons, or while said Joseph McCann,
Mira Dugan, or either of them, or some other person or
persons held said deceased in confinement or otherwise re-

stricted and restrained her of her liberty, and thereby com-
pelled her to execute said paper-writing?

6th. Was the said paper-writing procured by the fraud,
misrepresentation, or artifice of Joseph H. McCann or Mira
Dugan, or either of them, or of any other person?

These issues, it will be noted, are substantially the same
as those which had been transmitted on behalf of John Mc-
Grane, with the exception that among the latter there was a
seventh one on the question of revocation.

From this order an appeal was taken on behalf of Mira
Dugan and Joseph McCann; and it is this appeal that is
now before us.    We find no other appeal in the record.

*Mr. Joseph Shillington* and *Mr. Edwin Forrest* for the ap-
pellants :

1. On the transmission to the Orphans' Court of the
findings of the jury on the issues sent for trial on the caveat
of John McGrane, the caveatees (appellants) were entitled
to a judgment.    *Pegg* v. *Warford*, 4 Md. 394.

2. The publication in the " Washington Law Reporter"
of the notice of the application for probate, in accordance
with Rule 20 of the Supreme Court of the District, was
sufficient.    Under the law, it was in the discretion of the
Court to say what notice, if any, in addition to that pro-
vided for by the rule, should be given; and its decision was
binding on all as to the sufficiency of the notice.

3. A judgment entered in a proceeding of this character
is a judgment *in rem* and conclusive not only on the parties
to the controversy, but the whole world.    A judgment *in
rem* is declared to be—" an adjudication upon the status of
some particular subject-matter by a tribunal having com-
petent authority for that purpose."    Smith's Lead. Cases,
vol. 2, 585; *Nevada* v. *C. P. Railroad Co.*, 10 Nev. 80;
Freeman on Judgments, sec. 600–606.    And estops and
precludes all persons from denying that the status of the
thing operated upon is not what the court has declared it to

be (*Cammell* v. *Sewell*, 3 H. & N. 617; *Simpson* v. *Fogo*, 29 L. J. Ch. 667; *Costuque* v. *Imrie*, 8 C. B. N. S. 1), and such judgments are conclusive not only upon parties and privies, but upon strangers.   In fact, a judgment *in rem* is conclusive against the whole world.   *Lord* v. *Childourne*, 42 Me. 429; *Fay* v. *Taylor*, 1 Head, 594; *State* v. *Railroad Co.*, 10 Nev. 47; *Street* v. *Ins. Co.*, 12 Rich. L. 13.

A grant of probate or of administration is in the nature of a decree *in rem*, and actually invests the executor or administrator with the character which it declares to belong to him.   2 Smith's Lead. Cases, 6th Amer. ed. 669.   *Noel* v. *Wells*, 1 Liv. 235; *Allen* v. *Deiredas*, 3 T. R. 125; *Fry* v. *Taylor*, 1 Head, 594; *Archer* v. *Morse*, 2 Vernon, 8; *Gingell* v. *Horne*, 9 Sim. 539.

Considerations of public policy require that all questions of successions to property should be authoritatively settled. Courts of probate are therefore organized to pass on such questions when arising under wills; and a judgment by such court is conclusive whilst it remains in force, and the succession is governed accordingly.   A judgment of this nature is classed amongst those which in legal nomenclature are called "judgments *in rem.*"   Until reversed it binds not only the immediate parties to the proceedings in which it is had, but all other persons and all other courts.   3 Lom. Dig. 86, new ed.   1 Starkie on Ev. 228.   *Coaltor's Excr.* v. *Bryan*, 1 Gratt. 18; *Wills* v. *Spraggins*, 3 Gratt. 555; *Schultz* v. *Schultz*, 10 Gratt. 358; *Ballow* v. *Hudson et al.*, 13 Gratt. 682; *Thunpkries* v. *Thunpkries*, 1 Story, 547; *Durland* v. *Harrington*, 29 Ala. 95; *Woodruff* v. *Taylor*, 20 Vermont, 65; *Pegg* v. *Warford*, 4 Md. 394; Black on Judgments, secs. 633–635; *Cecil* v. *Cecil*, 19 Md. 72; Herman on Estoppel and *Res Adjudicata*, secs. 292–293 and 295; *Colton* v. *Ross*, 2 Paige, 396; *Kerrick* v. *Brausby*, 7 Brown's Cases, 437; *Jones* v. *Jones*, 7 Price, 663; *Jones* v. *Frost*, 1 Jacobs, 466; *Pemberton* v. *Pemberton*, 13 Ves. 290; *Adams* v. *De Cook*, 1 McAll. 253; *Brock* v. *Frank*, 51 Ala. 85; *James* v. *Williams*, 31 Ark. 175; *Stephens* v. *Ellis*, 35 Mich. 446.

Where on the application of one party, an issue is transmitted to a court of law for trial, the granting on the application of another party of substantially the same issue to be tried before another jury, is a mere nullity—a void act. On an appeal from an order of the Orphans' Court awarding the same issue a second time, this court would be bound to denounce it as utterly void and of none effect. *Pegg* v. *Warford*, 4 Md. 394.

*Mr. D. W. Glassie* and *Mr. H. H. Glassie* for the appellee :

1. By sec. 8, sub-ch. 2, ch. 101, act of 1798, two modes of notice are provided to be given to near relatives of the propounding of a will of a decedent, viz : either by summons or by notice given in the public papers, as the court may think proper. The purpose of the publication of the propounding of an alleged will for probate is to make known the fact that such an alleged will has been filed for probate in order to preserve rights, to prevent fraud and collusion, and to appoint a day when both sides may be present, to the end that decedent's estate may be honestly, economically, and expeditiously administered.

It is almost a universally recognized rule that where notice is required or authorized by statute in any legal proceedings, it means written notice to the persons affected. *Lane* v. *Cary*, 19 Barb. 539 ; *Gilbert* v. *Turnpike Co.*, 3 John. Ch. 107 ; *Miner* v. *Clark*, 15 Wend. 429 ; *Pearson* v. *Lovejoy*, 53 Barb. 407.

A resident of Maryland, beyond the jurisdiction of this court, who testifies that he did not have notice of the proposed probate of said alleged will, is not estopped or deprived of his rights by reason of publication in the Washington Law Reporter. Secs. 10 and 13, sub-ch. 2, ch. 101, act of 1798.

2. Even if it should be held that a notice to appear at a day given, published in " public papers," as provided in sec. 8,

sub-ch. 2, ch. 101, act 1798, would shut out all the world except those who appeared at that day, the Washington Law Reporter is not such " public paper." *King* v. *Railroad*, 29 N. J. Law, 82; *Watkins* v. *Peck*, 13 N. H. 360; *Pearson* v. *Lovejoy*, 53 Barb.' 467.

3. It is contended that the verdict of the jury on the issues sent out on the caveat of John McGrane is a judgment *in rem.* If that be so, then appellant, who is a non-resident, is not bound unless it be shown that he had been served with process or had appeared and subjected himself to the jurisdiction of the court. *Kilburn* v. *Woodward*, 5 Johns. 37; *Aldrich* v. *Kinney*, 4 Conn. 380; *Biswell* v. *Briggs*, 9 Mass. 462; *Fisher* v. *Lane*, 15 Johns, 121.

But the verdict of a jury on issues sent out is no judgment *in rem.* It is no judgment at all. It is intended merely to enlighten the Orphans' Court. *Van Ness* v. *Van Ness*, 6 Wall. 68; *Watt* v. *Starke*, 101 U. S. 252; *Barton* v. *Barbour*, 104 U. S. 126; *Idaho* v. *Bradbury*, 132 U. S. 516; *Warford* v. *Colvin*, 14 Md. 555; *Pegg* v. *Warford*, 4 Md. 395. The trial is merely auxiliary to the proceedings in the Orphans' Court, and all the while within the probate powers of that court which alone has the jurisdiction to pronounce judgment in the premises. *Stevenson* v. *Reigert*, 1 Gill, 29; *Browne* v. *Browne*, 22 Md. 115.

Since the object of the finding of a jury on issue is simply to enlighten the Orphans' Court " as to the real facts in the case " whenever the court is informed that the record or certificate of such finding is incorrect, or that such finding is not a true and real finding on contest, it is competent and proper that the court ignore that part of such finding which the jury did not and could not actually determine upon. *Munnikhuysen* v *Magraw*, 57 Md. 189. And when it is alleged that the plaintiff abandoned certain issues, and that no evidence in respect to them was adduced before the jury, it is the duty of the court to admit parol testimony as to what was actually litigated before said juiy. Since the *Duchess of Kingston's Case* it has been uniformly held that

when a former final judgment is pleaded in estoppel to a present action it is proper to show by parol testimony what was actually litigated. *Hickerson* v. *Mexico,* 58 Mo. 61 ; *Cunningham* v. *Foster,* 49 Me. 68 ; *Packet Co.* v. *Sickles,* 24 How. 333 ; *Packet Co.* v. *Sickles,* 5 Wall. 580 ; *Russell* v. *Place,* 94 U. S. 606 ; *Fifield* v. *Edwards,* 39 Mich. 264.

The principles laid down above hold good when the final judgment of another court is pleaded in estoppel. They hold with greater force when there is no final judgment whatever, but merely the advisory finding of the jury on certain facts. To hold otherwise would defeat the very purpose of the trial of the issues—" the enlightenment of the Orphans' Court as to the *real* facts in the case."

Mr. Justice MORRIS delivered the opinion of the Court:

1. As we have stated, the greater part of the record before us is a transcript of the proceedings in the Circuit Court branch of the Supreme Court of the District of Columbia in the matter of the issues upon the question of the legitimacy of the appellee George H. Northcutt ; and to the discussion of the points of law involved in those proceedings the arguments of counsel have been mainly directed. And yet it does not appear to us that we have jurisdiction to review that matter in this present appeal. Under the law of its creation, this court has appellate jurisdiction, in reference to the Supreme Court of the District of Columbia, to review only the final orders, judgments and decrees of that court, and certain specified interlocutory orders that do not concern us here ; and we find in the present case no such order, decree, or judgment.

The appeal is from an order adjudging that the appellee has the right to have issues sent to a jury, and ordering that certain specified issues be sent. This is not a final order, decree, or judgment in any proper sense of those terms. The subject-matter of controversy before the court was the validity of the will of Annie E. Northcutt.

The legitimacy or illegitimacy of the appellee has no direct bearing upon that subject. It does not tend of itself either to establish or to overthrow the will. The issue was wholly a collateral issue; and its determination did not affect any right of person or of property. Its result was merely to give the appellee a standing in court, and to become a party litigant. The adjudication, if the order can be called an adjudication, was no more than an order in equity allowing a person not named as a plaintiff or defendant to intervene in a suit. It may be that it will have no effect whatever on the subject-matter of controversy; for whether the will is ultimately to be sustained or overthrown, the result must be due to causes entirely outside of the question of legitimacy. The legitimacy of the appellee may be a circumstance in the case and a factor in the result; but of itself it could no more show the invalidity of the will than his illegitimacy would tend to uphold it. Like the question of the competency of a witness in the case, this matter, like all other incidental matters in the proceedings, may become the subject of review in this court, whenever the cause comes before us on appeal from some final order, decree, or judgment establishing the will or adjudging its invalidity. In the meantime, however desirable it may be to have a final determination of this special question, we are unable to find any authority in the law that would give us the right to pass upon the question at this time.

2. With reference to so much of the order appealed from as directs issues to be transmitted to a jury for trial and formulates the issues for the purpose, ignoring the previous issues and findings upon the same points, a very different question is presented.

Under ordinary circumstances, an order of the Orphans' Court transmitting issues to the circuit court for trial before a jury, is only an interlocutory order, and no appeal will lie from it. It determines nothing; it affects no right; and consequently there is nothing upon which to base an ap-

peal. The sending of issues from the Orphans' Court is a matter of right to the parties in interest, which that court is not at liberty to refuse. The act of Maryland of 1798, chap. 101, sub-ch. 15, secs. 16 and 17, is mandatory upon the subject, and does not leave it to the discretion of the court; and we have so held. *In re Estate of Atwood,* 2 App. D. C. 74. But when issues have once been transmitted and there has been a verdict of the jury upon them, and such verdict has been certified to the Orphans' Court, this verdict, unless vacated by some proper proceeding for the purpose, is binding upon the Orphans' Court and upon all the world; and it is the duty of the Orphans' Court to enter judgment thereon in accordance with the verdict. Such verdict and judgment then become conclusive of the issues and the Orphans' Court is not thereafter at liberty to direct any further or other litigation of the same issues at the instance of anyone. And we regard this question as very well settled by the terms of the statute, by reason, and by authority.

The statute provides that in case either party shall require it, the court shall direct an issue or issues to be made up and sent to a court of law, and shall give judgment upon the finding of the jury. This is plainly mandatory. And yet after all it requires no more of the Orphans' Court than it required of the courts of common law in respect of all verdicts. In the case of *Van Ness* v. *Van Ness*, 6 How. 62, the Supreme Court of the United States, dealing with this same subject and the construction of the act of 1798, said: "A verdict in any court of common law, if not set aside, is in all cases conclusive as to the fact found by the jury, and the judgment of the court must follow it; as the Orphans' Court must follow the verdict in this case."

In the case of *Pegg* v. *Warford*, 4 Md. 385, it was said by the court: "We hold, therefore, from the very nature of the thing, when a question is once submitted, so far as it is concerned, the functions of the Orphans' Court are suspended until the finding of the jury be certified, and when

that is done, it has no discretion in regard to it, but is imperatively required to enter up judgment in conformity thereto. And as a consequence of this, where, on the application of one party, an issue is transmitted to a court of law for trial, the granting, on the application of another party, of substantially the same issue to be tried before another jury, is a mere nullity—a void act. On an appeal from an order of the Orphans' Court awarding the same issue a second time, this court would be bound to denounce it as utterly void and of none effect."

In the same case the court said also : " No issue can be granted which substantially embraces the same question that has been pronounced upon by the jury ; for their finding in regard to it is conclusive and binding on the whole world. Nor, for the same reason, can the same issue be granted on the several applications of different parties, unless they be joined as plaintiffs or defendants, so as to produce by the trial but one and the same verdict. Were different parties permitted to propound the same question to different juries, there might, and most probably would · be, different verdicts, and as an inevitable consequence, under the act of 1798, different judgments in the Orphans' Court on the same matter. It would be absurd to impute such a folly to the act. Its purpose is to insure certainty ; and this cannot be accomplished if the same question be submitted to different juries."

The same doctrine was substantially reaffirmed in the case of *Worthington* v. *Gittings*, 56 Md. 542—although in this latter case the contested will had been admitted to probate upon the verdict of the jury upon the first issues before application was made by other parties for substantially the same issues to be tried on their behalf. In other respects, that case was not very unlike the one now under consideration. There a caveat had been filed to a will by two of the heirs-at-law of the deceased—their precise relationship, however, does not appear from the report of the case ; whereupon issues were sent for trial by a jury, and a

verdict rendered in favor of the caveatees, in pursuance of which the will was admitted to probate.   Subsequently the children of a deceased brother residing in a distant State, who had not been made parties to the proceedings upon the former caveat, either by name, citation, or publication, filed a petition and caveat to the will, and requested issues to be sent for trial substantially the same with those which had been previously passed upon.   But the court refused to send such issues, and its decision was sustained on appeal, notwithstanding that the petitioners had alleged that the verdict of the jury upon the previous issues had been procured by agreement and fraudulent concert between the parties to the proceedings.   It was held by the Court of Appeals of Maryland in that case, that, when probate had been passed and letters have been granted, after contest involving the validity of the will, no further proceeding in the Orphans' Court touching that question can be had, unless the probate were first revoked for fraud or collusion, upon proper proceeding taken for that purpose.

Different issues, it is true, affecting the validity of the will on different grounds, may be successively sent to the same jury, or to different juries for trial, on behalf of the same or of different caveators, as often as the nature of the case is capable of generating issues.   But it is the policy of the law to combine the issues as far as possible, and to require all the parties to join in them, who have filed caveats, so that it may be definitely ascertained in a single proceeding, if possible, whether a paper, purporting to be of a testamentary character, is or is not a valid instrument.   But there is no warrant in law or in reason for the trial by a jury a second time of issues that have been legally determined by a jury. The theory of *res adjudicata* is against such a course ; and it might perhaps be questioned whether such retrial would not be in violation of the constitutional provision that " no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law."   For it is not in accordance with the

rules of the common law, that issues of fact once tried should be subject to be tried again, while the previous verdict upon them stands.

It is intimated that great hardship might often result if the Orphans' Court were absolutely bound by the verdict of the jury ; that there might be newly discovered evidence ; that these issues are no different from issues sent from a court of chancery to be tried by a jury ; and that numerous circumstances and conditions might be imagined that would render it inequitable to enter judgment in accordance with the verdict. In this argument we have the assumption of incidental and equitable jurisdiction which the Act of 1798 denied to the Orphans' Court in express terms. It is a grave misapprehension of the law, that issues from an Orphans' Court do not differ in effect from issues sent from a court of chancery ; they do differ fundamentally and radically. There is no law that requires a chancellor to send issues to a jury. It is so much or so little a matter of practice merely that it has now almost fallen into disuse and become a matter simply of tradition. And, as is well known, the verdict of the jury upon such issues is only advisory, and may be, and not unfrequently has been, wholly disregarded. Not so the verdict of a jury upon issues from the Orphans' Court. The subject of these issues is regulated by a statute, which, as we have seen, is mandatory in its terms, and leaves no discretion to the Orphans' Court. It might be that it would be wise to repose some equitable jurisdiction in the Orphans' Court as now constituted in this jurisdiction ; but it is sufficient for our present purpose to say that Congress has not yet thought proper to give it, or to modify in any manner in that regard the provisions and the limitations of the act of 1798.

Nor is it any hardship that by the finality of verdicts upon issues from the Orphans' Court parties may be precluded from using newly discovered evidence. There is no good reason for refusing to give to this class of verdicts the same stability that is given to all others. There must be an end

of litigation; and causes can not be reopened indefinitely for newly discovered evidence. There may be such new evidence as would justify proceedings to have the probate of a will vacated; but there should be proper proceedings to take advantage of it; and the arbitrary refusal of the Orphans' Court to render judgment in accordance with a previous verdict of a jury is not such a proceeding.

So likewise parties are entitled to impeach the probate of a will and the verdict upon which it is based for fraud and collusion in their procurement; but such proceeding must be upon proper proceedings taken for the purpose. *Worthington* v. *Gittings*, 56 Md. 542, 549. And it may be added that, where the issues tried by the jury do not include all the issues that can properly and legitimately be formulated in the cause, it does not always follow that the paper must be admitted to probate because the verdict has been in favor of its validity upon the issues that have been submitted. In the case of *Pegg* v. *Warford, supra,* it was said:

"It does not necessarily follow, because the finding of a jury on issues be as is desired by those at whose instance they may have been awarded, that the paper shall be admitted to or denied probate as the case may be. The finding of the jury may be affirmatively or negatively on the questions submitted, and yet such finding either way may not determine the question of the validity of the paper as a will; there may be other facts outside of the verdict and not inconsistent with it which will decide the question. For instance, a jury might find on an issue so framed that a certain paper, purporting to be a last will, was executed, duly attested, and published as such, and yet its *final* judgment might be against the paper as a valid will; because it might appear from testimony taken before the Orphans' Court, or by the finding of another jury, that at the time of the execution and publication, the testator had not the requisite disposing capacity. And this being so, the Orphans' Court have not only the right, but are bound to render their final judgment on the finding of different juries,

where they have pronounced on different issues touching the same paper. They are also to consider all testimony adduced before them on the same subject which is not inconsistent with the finding of the juries. But so far as the facts covered by the verdicts are involved, they are settled unalterably by them, and all other facts contrariwise are to be disregarded."

It has been urged, that because under some of the issues that were before the jury under the caveat of John McGrane in this case no testimony was offered, and the trial justice, in consequence of such total want of proof on the part of the caveator, who was the plaintiff in the issues, directed the jury to render their answers on those issues in favor of the caveatees, therefore there was no trial of those issues, and the Orphans' Court is at liberty to have them tried again, or to formulate new issues on the very same subjects. This we conceive to be a very grave mistake. A verdict is no less binding and conclusive because rendered upon total failure of proof, or upon wholly insufficient proof, than it would be when following upon sharply contested and well balanced testimony. Indeed, it would seem that it ought to be more conclusive, if possible, in the former case. Of course, if the failure to adduce proof on the part of a caveator is the result of collusion between the parties, or of circumstances and conditions amounting to fraud, actual or constructive, upon the rights of other parties affected thereby, such failure would constitute a good ground for proceedings to vacate the verdict. For, as is well known, fraud will vitiate everything ; and a verdict superinduced by fraud should not be permitted to stand. Whether the procurement of issues and their transmission to a jury for trial when the caveator who procures them has no testimony whatever for their support, and no reasonable expectation of obtaining any such testimony, and merely sues out the issues for the purpose of discrediting the will and with the vague anticipation, perhaps, that something might turn up to justify them, as is too frequently

done, should not be regarded as a fraud upon the rights of other parties in interest who might honestly be entitled to litigate such issues, we are not here called upon to decide. Certainly, such a course is a fraud upon the court and upon the administration of justice, for which the abandonment of the issues before the jury is no more than proper reparation.

A question is also made upon the notice by publication that was given in this case upon the application of the executors for the probate of the will. The order of publication was inserted for three weeks in the Washington Law Reporter, and no other publication seems to have been made. This has been stigmatized as a travesty of justice. It may be that such a notice is very inadequate to reach the parties whom it is its apparent purpose to reach ; but all notices by way of publication are imperfect and inadequate, and are only justified by the propriety of having the rights of persons present and within the jurisdiction secured or enforced against the absent or the unknown who cannot be reached by the regular process of the court. There is no more certainty that the absent or the unknown will be reached by notice in the newspaper of the largest circulation in the world than if it is inserted in a publication circulating almost exclusively among members of the legal profession, many of whom are on the alert to convey such notice to those whom, perhaps, it might not otherwise reach. Improvements in this method of notice can readily be suggested ; and it seems to be within the power of the courts to make them. But the method here used appears to have been the usual method for many years in the practice of the Orphans' Court of the District of Columbia. No notice of the application for the probate of a will is required by the testamentary law ; but there is a provision for such notice in the rules of the Supreme Court of the District of Columbia for the Orphans' Court, by way of personal service of citation to the next of kin resident in the District, and, when any of such next of kin are

non-residents, by publication in one or more newspapers printed or published in the city of Washington for such time and in such manner as the court may direct. The court in the present instance designated the Washington Law Reporter as the newspaper in which the notice should be inserted. We fail to see how this action can be regarded as implying a failure of jurisdiction on the part of the court to proceed, as seems to have been subsequently assumed. While publication was proper and the best possible publication should be secured, we know of no provision of law that makes the jurisdiction of the Orphans' Court depend upon notice to the next of kin. And even if jurisdiction did depend upon it, that jurisdiction attached when any of the persons intended to be notified voluntarily came in and became actors in the proceedings as occurred in the present case. The issues on behalf of John McGrane and the proceedings thereon were regular ; and the validity cannot be questioned because the notice by way of publication might have been defective or insufficient duly to warn others equally entitled to be made acquainted with the application for probate.

We are of the opinion that the order made by the court below on June 22, 1895, transmitting issues to the Circuit Court on behalf of the appellee, George H. Northcutt, was erroneous, and should be reversed and vacated. We think that, if the appellee has any good or reasonable ground whereon to impeach the proceedings had upon the caveat of John McGrane and the issues thereupon transmitted, for fraud or collusion, reasonable time and opportunity should be given to him for that purpose. And further, if he can formulate any further issues substantially different from those already tried and whereby the validity of the alleged will of Annie E. Northcutt may be affected, he should also have leave to file and prosecute such issues. But in the event of the failure of said appellee, within such reasonable time as may be prescribed by the court, to file such new issues, or to institute proceedings in due form for the impeachment of

the proceedings had upon the petition and caveat of John McGrane, the Orphans' Court should proceed forthwith to enter up its judgment or decree upon the verdict of the jury heretofore rendered on the issues transmitted to be tried on the caveat of John McGrane, and for the admission to probate of the will of the deceased Annie E. Northcutt.

*The order of the court below appealed from is therefore reversed, with costs, in so far as it directs certain issues therein specified to be transmitted to a jury for trial; and the cause is remanded to that court for further proceedings therein in accordance with law and in conformity with this opinion. And it is so ordered.*

On December 6, 1895, *Messrs. Glassie & Glassie,* for the appellee, filed a motion for a rehearing. The motion was opposed by *Mr. Shillington* and *Mr. Forrest,* for the appellant.

On December 9, 1895, the motion was denied, Mr. Justice MORRIS delivering the opinion of the Court:

The motion for a rehearing in this case must be denied.

We appreciate the hardships of the appellee's being precluded from trying the issues requested by him; but the due administration of justice peremptorily requires that issues once tried by a jury should not be subject to be again tried by another jury at the instance of another person. We have pointed out the course to which the appellee may recur, in the event that he has reason to believe that he has been precluded from any just right to which he may be entitled; and we have no doubt that, if any good cause can be shown in the Orphans' Court for vacating the proceedings upon the former issues, that court will not hesitate to vacate them.